Ian C. CHAPPELL, Plaintiff-Appellant,

v.

GTE PRODUCTS CORPORATION, Defendant-Appellee.

No. 85–5333.

United States Court of Appeals, Sixth Circuit.

Argued April 22, 1986.

Decided Oct. 14, 1986.

Kenneth W. Scott (argued), Florence, Ky., Edward S. Monohan, Florence, Ky., for plaintiff-appellant.

David M. Eisenberg (argued), GTE Service Corp., Stamford, Conn., Karen P. Ross, for defendant-appellee.

Before MERRITT and JONES, Circuit Judges, and THOMAS, Senior District Judge.*

NATHANIEL R. JONES, Circuit Judge.

Plaintiff Ian Chappell appeals from the district court's order granting the defendant GTE Products Corporation's motion for judgment notwithstanding the verdict in this action alleging a violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* (1982). The jury had returned a verdict finding that GTE had discriminated on the basis of age when it laid off Chappell. We affirm the district court's order granting GTE's motion.

Chappell was 56 years old at the time of his layoff from GTE's U.S. Lighting Division (Sylvania). Sylvania manufactures industrial and commercial lighting at the GTE plant in Winchester, Kentucky. The

* The Honorable William K. Thomas, Senior Judge, United States District Court for the Northern District of Ohio, sitting by designation.

Winchester plant is part of a worldwide operation with 50 to 60 operating plants and laboratories in about 13 countries. From 1979–80, net income from the Winchester plant fell by over 40%, and in July 1980 Sylvania began to implement a major reduction in its salaried personnel. As a result, four layoffs occurred between July 1980 and November 1982.

With the exception of two brief periods, Chappell had worked for Sylvania as a design engineer since 1952. In 1969 Chappell began working at the Winchester plant as a Senior Engineer "A" in the New Product Development Department (NPD) where he stayed until 1980. In 1980, Chappell's position of Senior Engineer was eliminated as part of the first major reduction in salaried personnel. Chappell was transferred to the position of Production Technician. Two incumbent technicians were laid off at that time. Chappell's salary was maintained at Grade 6 level (Senior Engineer) although production technicians were ordinarily paid at Grade 4 level. As a production technician, Chappell worked for four months in the dichroic coating room until he was transferred to the Parabolic Aluminized Reflector (PAR) factory engineering section. He worked there as one of two technicians responsible for the technical and quality control of all PAR functions.

In 1981 Sylvania's Winchester plant suffered a loss of $2.6 million, or 20% of its net income. The company implemented two additional 5% reductions in salaried personnel, neither of which affected Chappell. In November 1982 Sylvania mandated a further 10% reduction in the Winchester plant's salaried work force. Each department head was instructed to eliminate those positions that would least impact the department's operations. In the Production Department, the positions of one Production Technician, one Specification Clerk, and one Project Engineer were designated for elimination.

The three Production Technicians were similar in several respects. Each was a member of the ADEA protected age group (40–70): Chappell was 56, Manuel Shewmaker was 54, and William Berry was 47. In addition, each was a long-time Sylvania employee with nearly 25 years of work experience. In performance appraisals, however, the three technicians had been rated differently. There were five different ratings an employee could receive: "excellent," "commendable," "fully satisfactory," "provisional," and "unsatisfactory." Berry's performance rating ranged from "commendable" to "fully satisfactory;" Shewmaker's rating was consistently "fully satisfactory;" Chappell's rating ranged from "average-good" to "unsatisfactory." Chappell was the Production Technician selected for layoff at this time. The other Production Department employees laid off were outside the protected age group: a Project Engineer aged 32 and a Specification Clerk aged 34. Chappell was officially laid off on November 19, 1982.

The plant closed down for two weeks following the final layoff. According to the GTE supervisor's testimony, a decision was made during this two week hiatus to eliminate the position of Production Supervisor in the Relight and Packing Department. That position was being held by Jo Ann Miller, who was 41 years of age and had been employed by Sylvania for eighteen years. Miller had an excellent performance record and was one of the few female supervisors in the plant. Because the layoff objectives had already been achieved, GTE transferred Miller to the Production Technician position previously held by Chappell out of its desire to retain a consistently fine employee and the need to satisfy affirmative action responsibilities.

Chappell filed suit in the district court alleging that his layoff and the subsequent transfer of Miller to his former position was a violation of the ADEA. The jury returned a verdict for Chappell finding that GTE discriminated on the basis of age when Chappell was laid off. The district court granted GTE's motion for judgment notwithstanding the verdict, concluding that the record was devoid of any evidence that age was a determining factor in GTE's

decision to lay Chappell off. Moreover, the court concluded that there was no evidence that age had anything to do with Miller's transfer to the position of Production Technician.

■ A judgment notwithstanding the verdict is a question of law that is freely reviewable on appeal. The issue raised by a j.n.o.v. is whether there was sufficient evidence to raise a question of fact for the jury. *O'Neill v. Kiledjian,* 511 F.2d 511, 513 (6th Cir.1975). The legal standard is the same in both the trial court and the court of appeals. In determining whether the evidence was sufficient, the court may neither weigh the evidence, pass on the credibility of witnesses, or substitute its judgment for that of the jury. Instead, the evidence must be viewed in the light most favorable to the party against whom the motion was made, drawing from that evidence all reasonable inferences in his favor. *Morelock v. NCR Corp.,* 586 F.2d 1096, 1104 (6th Cir.1978), *cert. denied,* 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979); *Gillham v. Admiral Corp.,* 523 F.2d 102, 109 (6th Cir.1975), *cert. denied,* 424 U.S. 913, 96 S.Ct. 1113, 47 L.Ed.2d 318 (1976). Although the fundamental principle is that there must be a minimum of interference with the jury, the federal courts do not follow the rule that a scintilla of evidence is enough. *A.B. Small Co. v. Lamborn & Co.,* 267 U.S. 248, 254, 45 S.Ct. 300, 303, 69 L.Ed. 597 (1925). If the court finds that the evidence points so strongly in favor of the movant that reasonable minds could not come to a different conclusion, then the judgment n.o.v. should be upheld. *Reeves v. Power Tools, Inc.,* 474 F.2d 375, 380 (6th Cir.1973).

Jury control devices such as judgment n.o.v. or directed verdict have been recognized by courts as applicable in certain age discrimination cases due to the possibility that sympathy for the plaintiff may present an overriding but impermissible factor in a jury verdict for plaintiff. *See Coburn v. Pan American World Airways, Inc.,* 711 F.2d 339, 343 (D.C.Cir.), *cert. denied,* 464 U.S. 994, 104 S.Ct. 488, 78

L.Ed.2d 683 (1983); *Lovelace v. Sherwin-Williams Co.,* 681 F.2d 230, 242 (4th Cir. 1982). "[T]he question for the jury was not whether plaintiff was treated fairly but whether discrimination occurred." *Sahadi v. Reynolds Chemical,* 636 F.2d 1116, 1117 (6th Cir.1980).

■ The evidentiary guidelines governing proof in discrimination cases were first set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (construing Title VII), and the same analysis is generally applied in ADEA cases. *Coburn,* 711 F.2d at 342. A three-step judicial procedure allocates the shifting burdens of production of evidence by the parties. "[T]he burden of production rests first on the plaintiff to establish his *prima facie* case, then on the defendant 'to articulate some legitimate nondiscriminatory reason for the employee's rejection,' and finally again on the plaintiff to show that the defendant's reasons were pretextual." *Holley v. Sanyo Mfg., Inc.,* 771 F.2d 1161, 1164 (8th Cir. 1985) (quoting *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825). Although the burden of production shifts, the burden of persuasion remains at all times with the plaintiff. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981).

■ In cases brought under the ADEA, a plaintiff has the ultimate burden of proving that age was a determining factor in the employer's decision in order to establish liability. *Blackwell v. Sun Electric Corp.,* 696 F.2d 1176, 1180 (6th Cir. 1983). When there is more than one reason advanced for an employer's decision, the plaintiff may prevail if he establishes that "but for" a discriminatory motive, the action would not have been taken. *Wilkins v. Eaton Corp.,* 790 F.2d 515, 520 (6th Cir.1986).

■ To make out a *prima facie* case, the plaintiff must show that he was in the protected age group (40–70), that he was discharged, that he was qualified for the position and that he was replaced by a

younger person. *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 69 (6th Cir. 1982); *Wilkins*, 790 F.2d at 520. The third element may be replaced with a showing "that he was doing his job well enough to meet his employer's legitimate expectations." *See La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1409 (7th Cir.1984). In a reduction in force situation where the ADEA plaintiff's position is eliminated and not refilled, the *prima facie* burden is somewhat heavier. *LaGrant v. Gulf & Western Manufacturing Co.*, 748 F.2d 1087, 1090–91 (6th Cir. 1984). In the instant case, the district court ruled that Chappell had met his burden of persuasion in establishing a *prima facie* case of discrimination. We agree that Chappell met this burden so we need not discuss the *prima facie* question here.

Once the court has found that the plaintiff has established a *prima facie* case, the burden of production shifts to the defendant to produce admissible evidence of a nondiscriminatory reason for the challenged action. The defendant "need not persuade the [trier of fact] that it was actually motivated by the proffered reasons," *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094, but "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Id.* at 257, 101 S.Ct. at 1096. The district court found that Sylvania had met its burden of production in establishing legitimate business reasons for Chappell's layoff and the evidence supports this finding. The parties do not dispute that Sylvania was facing severe financial setbacks at its Winchester plant, having gone from a $4.6 million profit in 1979 to a $2.6 million loss in 1982. This economic situation reasonably resulted in a series of layoffs to reduce the salaried work force at Winchester. Sylvania adduced evidence

that a decision was made to reduce the number of technicians on the PAR lines, that Chappell had the lowest personnel evaluation of the three PAR technicians, and that Chappell's position was eliminated at that time.

Once Sylvania articulated legitimate, nondiscriminatory reasons for its selection of Chappell for layoff, the burden shifted to Chappell to prove by a preponderance of the evidence that those reasons were a pretext for intentional age discrimination. *Davis v. Combustion Engineering Inc.*, 742 F.2d 916, 921 (6th Cir.1984). Three ways in which a plaintiff can establish that defendant's reasons for laying off the plaintiff were not credible are: (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the discharge, or (3) if they were factors, by showing that they were jointly insufficient to motivate the discharge. *La Montagne*, 750 F.2d at 1414–15. The factfinder may not, however, focus on the soundness of an employer's business judgment. *Wilkins*, 790 F.2d at 521.

Often, plaintiffs have a difficult task in meeting their burden of persuasion in ADEA cases, although they have only to show that age was "a," and not "the," determining factor in the employer's personnel decision. *Cuddy v. Carmen*, 694 F.2d 853, 859 (D.C.Cir.1982), *cert. denied*, — U.S. ——, 106 S.Ct. 597, 88 L.Ed.2d 576 (1985). Typically, they must rely on such circumstantial evidence as differential treatment, inconsistent records or statistical evidence of discrimination in order to establish the necessary inferences. *See id.* (quoting B. Schlei & P. Grossman, *Employment Discrimination Law* 1153–55 (1976)).

In this case, Chappell argues the following points to support his claim that Sylvania's articulated reasons were pretextual:[1]

---

**1.** Chappell also argues two other points to support his claim. Neither of the arguments raises an inference of age discrimination. First, he offered evidence that the shrinkage figures for the PAR Department increased when he first began working there and declined after he was laid off. The record shows, however, that the shrinkage rates reflected the efforts of three shifts, 150 employees and the introduction of mechanical and product innovations. The declining figures do not

(1) the fact that Sylvania later transferred Jo Ann Miller, also an employee within the protected age group, from a Production Supervisor position to the job of Production Technician, and (2) statistics obtained and tabulated by the plaintiff himself relating to demotions at the Winchester plant. We will address each of these contentions in turn.

### (1) *Transfer of Jo Ann Miller*

Sylvania's supervisors testified that the Winchester plant management decided to reorganize the packing aspect of line operations in an effort to improve efficiency. As part of this action, the packing department was disbanded and the position of Production Supervisor held by Miller was eliminated. Miller, an 18–year employee with excellent performance appraisals, was given the option of being laid off or taking the job as Production Technician. That decision was made after GTE had already laid off the quota necessary to meet the ten per cent reduction.

The isolated fact that a younger person eventually replaces an older employee is not enough to permit a rebuttal inference that the replacement was motivated by age discrimination. *La Montagne,* 750 F.2d at 1413. Chappell offered no probative evidence suggesting that Miller was placed in the Production Technician's position because of a desire to replace him because of his age. There is not even a slight inference raised that the layoffs and Miller's transfer were anything but sound business decisions. Chappell was laid off from the production department as were two younger employees from that department. No evidence was offered that Sylvania was not required to reduce its work force by ten per cent, nor was any offered disputing the manner in which those cuts would take place. Sylvania did not eliminate the Production Technician's

position because the work performed in that position was not necessary, it eliminated that position because the loss of that work would have the least impact on the department's operations. Simply because Sylvania decided after the layoffs that a position would have to be made in order to retain a valuable employee—who also happened to be a member of the protected age category and a woman—and that position fortuitously happened to have previously been held by an older employee, does not necessarily raise an inference of age discrimination.

One case factually similar to this case is *Coburn v. Pan American World Airways, supra.* The plaintiff in that case was laid off from his position of reservations supervisor because of a reduction in force caused by the defendant's dire financial situation. Management was required to lay off the least productive employee in a designated peer group. Plaintiff was ranked lowest in his peer group and terminated. Even though plaintiff disputed his rating and the composition of his peer group, the court found that the promotion of two younger females after the defendant and another airline merged did not indicate that age discrimination played a part in his discharge. For those reasons, the District of Columbia Circuit affirmed the district court's order granting the defendant's motion for judgment notwithstanding the verdict.

A company in severe financial straits may face difficult and painstaking choices in deciding which employees must be laid off to help curtail operating expenses. Often business decisions may force the company to eliminate jobs held by members in a protected category. When those situations arise, a plaintiff alleging that he was laid off for discriminatory reasons necessarily has a more difficult time proving his

show that his performance alone affected the production of the department.

Second, Chappell argues that the defendant's failure to respond to his June 1984 application for the advertised position of Senior Industrial Engineer raised an inference of age discrimination. Chappell did not, however, meet the basic qualifications for the position. Minimum qualifications were a bachelor of science degree in Industrial Engineering and additional work certification, neither of which Chappell had. Moreover, that position had not been filled at the time of trial.

case. The record in this case does not reveal that Miller's transfer to the Production Technician's position was not based on legitimate business concerns. It may very well be that there is a question as to whether Chappell was in fact a better performer than the two Production Technicians not discharged. But that would not raise an inference of age discrimination when both of the men retained were also in the protected age category, and two younger men in the same department were discharged.

## (2) Statistical Evidence Offered by Chappell

 At trial, Chappell offered "demotion statistics" as evidence of a decrease in the average employee age at the Winchester plant. He claimed to have obtained his statistics from "general observation" and the "environment" (attendance at birthday parties and newspaper notices). In his definition of "demotion," he included anyone who had left the Winchester plant for any reason, even to take a better paying job. He also offered statistical evidence that the average age of employees in the New Product Development Department declined between 1978 and 1984. The district court found that Chappell's statistical evidence was "mere conjecture" and "personal belief." We agree with the district court that the statistics offered by Chappell carry no weight. If he wanted to introduce true statistical evidence, he could have obtained the company records during the course of discovery. Mere personal beliefs, conjecture and speculation are insufficient to support an inference of age discrimination. *See Elliott v. Group Medical & Surgical Service*, 714 F.2d 556, 567 (5th Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984).

Sylvania's statistical evidence, on the other hand, showed that only 27%, or 3 of the 11 employees laid off on November 19, 1982, were members of the protected age group (40–70), at a time when that group made up 59% of the salaried work force. Over the period of the four layoffs, the under–40 work force fell from 52% to 37%, while the age-protected work force increased from 48% to 63%. The relevant statistics offered in this case do not aid Chappell's contention that a supportable inference of age discrimination was established.

 The record in this case is devoid of evidence permitting an inference that age was a determining factor in Chappell's layoff. Rather, the record shows that Chappell was laid off for sound and legitimate business reasons. Even if one could conclude from a very liberal reading of the record that a scintilla of evidence of age discrimination was found, that would nonetheless be insufficient to support a jury verdict. The jury must be able to find by a preponderance of the evidence that age discrimination was a determining factor in the employer's decision.[2]

Based on the record in this case, the district court's order granting the defendant's motion for judgment notwithstanding the verdict is AFFIRMED.

---

2. Chappell also contends that the district court erred in excluding evidence of purported age biased statements allegedly made out of court by Sylvania's agents. One of the statements allegedly made by a supervisor to Manual Shewmaker was "surely you must have noticed the young people taking over up front." The other statement was made in a dialogue between a former employee and former supervisor. The employee allegedly stated, "we old timers know the procedure as to how things operate within the company." The supervisor's response was "Don't categorize me in that with you." The district court ruled that the statements were prejudicial, and Chappell did not prove that Sylvania's agents had specific authority to make the statements. We agree. Such comments are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination. *See Haskell v. Kaman Corp.*, 743 F.2d 113, 120 (2d Cir.1984).