843 F.2d 1392
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Carmela E. SANTORO, Plaintiff-Appellant,
v.
BORDEN, INC., Defendant-Appellee.
 No. 87-3416.
 United States Court of Appeals, Sixth Circuit.
 April 5, 1988.
 
 Before KEITH, BOYCE F. MARTIN, Jr., and RYAN, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 Plaintiff-appellant Carmela Santoro brought this action under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Sec. 623 et seq., against her former employer, defendant-appellee Borden, Inc. (Borden). The district court granted Borden's motion for summary judgment. The issues on appeal are: (1) whether Santoro established a prima facie case under the ADEA, and (2) whether Borden's articulated reason for discharging Santoro has been shown to be either a pretext or unworthy of credence. We answer both questions in the negative, and, accordingly, affirm the district court's order.
 
 I.
 
 2
 Santoro was fifty-one years old when she was discharged by Borden on May 25, 1982. She was hired by Borden as a secretary in 1971. During the next six years, her supervisors evaluated her no less than five times. Her performance evaluations were generally quite complimentary.
 
 
 3
 In April, 1978, Santoro started working as a data control specialist for Dr. Norma Benton. Under Dr. Benton's supervision, Santoro entered information onto forms or charts which were mailed to Borden's computer center two or three times a week. Santoro also performed regular secretarial duties such as typing and answering the telephone. Essentially, Dr. Benton and Santoro were a two person department, where, according to the district court, "work had to be produced in a steady stream and the only person who could cover for Santoro was Dr. Benton."
 
 
 4
 Between 1979 and 1981, Dr. Benton evaluated Santoro's work at least three separate times. In April, 1980, Dr. Benton rated Santoro's work "good" to "very good," but noted that "at times [Santoro] tends to delay completion of some assignments longer than desirable." In April, 1981, Dr. Benton again rated Santoro's work as "good" to "very good," but noted: "Being some what [sic] volatile, [Santoro] sometimes lets emotional aspects override her good sense and dependability." The relationship between Santoro and Dr. Benton further deteriorated during the remainder of 1981. Dr. Benton testified that, "The one thing that I remember most clearly is that Carmela particularly never spoke to me the entire day. She would address me for only very specific things. She never addressed me for anything else."
 
 
 5
 As a result of these difficulties, Santoro met with Dr. Benton's immediate supervisor, a Mr. Livingston, in early 1982 and requested, unsuccessfully, a departmental transfer. Also in early 1982, Santoro sometimes failed to complete her daily work. On the morning of January 4, Santoro called to say that she would not be reporting to work that day as she had a doctor's appointment. On January 25, Santoro arrived to work 1 1/2 hours late and on January 27, she left unexpectedly for a doctor's appointment for her mother.
 
 
 6
 On February 9, 1982, Santoro met with Dr. Benton, then fifty-five years old, and Chris Kulick, manager of employee relations, then forty-nine years old, to discuss what the latter two perceived as persisting deficiencies in Santoro's work. Specifically, Dr. Benton and Kulick expressed concern over Santoro's "excessive" absences, the timeliness with which she completed her assignments, and the fact that Santoro went out of the department in bringing her problems to Livingston. Santoro received a written memo which admonished her and placed her on "sixty days probation for performance and tardiness/absenteeism." Santoro refused to sign the bottom of the memo under the heading "RECEIVED AND UNDERSTOOD" because she did not agree with the criticisms contained in it.
 
 
 7
 During the probationary period, from February 9 until April 12, 1982, Santoro's attendance improved. However, on April 19, 1982, at 11:30 a.m., Santoro notified Dr. Benton that she had a dental appointment on an emergency basis at 1:30 that afternoon. On May 5, 1982, Santoro notified Dr. Benton that she had to take the next day off for personal reasons. On May 25, 1982, Dr. Benton and Kulick again met with Santoro, this time to notify her that she was being given her "final warning." The two presented a written memo to Santoro outlining their concerns:
 
 
 8
 If responsibilities of the position which are supportive to the responsibilities of the function cannot be accepted in a pleasant, workable, and dependable manner, then you continue to leave me no choices. Any further tardiness, absenteeism, or lack of acceptable performance during the remainder of this year will result in discipline up to and including your termination. As of this date you are placed on final warning.
 
 
 9
 After Santoro refused to sign that portion of the memo headed "RECEIVED AND UNDERSTOOD," she was "involuntarily terminated for cause" by Kulick. Santoro thereafter received a "Separation Statement" from Borden which contained the following remarks: "Unacceptable performance. Would not accept probation letter." Borden did not replace Santoro. Rather, Santoro's duties were assumed by a younger secretary, age thirty-six, who also continued to perform her own previous duties.
 
 
 10
 Santoro thereafter filed a claim of age discrimination with the Ohio Civil Rights Commission (OCRC) and the Equal Employment Opportunity Commission (EEOC). The OCRC found no probable cause to support Santoro's claim that she had been discharged on the basis of her age:
 
 
 11
 Evidence substantiates that Charging Party [Santoro] was discharged because she was insubordinate in her refusal to accept or sign for final receipt of a final warning dated May 25, 1982.
 
 
 12
 Borden's company policies state in part that:
 
 
 13
 Some examples of conduct considered to violate these standards [rules of employee conduct] and constituting grounds for immediate termination are:
 
 
 14
 * * *
 
 
 15
 * * *
 
 
 16
 15. Insubordination or refusal to work.
 
 
 17
 Santoro thereafter filed this action under the ADEA, claiming that she was fired because of her age (51). In support of her claim, Santoro asserted that her predecessor, a younger woman named Fannie Holloway, then thirty-eight, successfully requested that Livingston transfer her away from Dr. Benton's department. Borden moved for summary judgment claiming its determination to fire Santoro was based solely upon her unacceptable performance and the fact that she would not accept the probation letter. The district court granted Borden's motion on two alternative grounds: (1) that Santoro failed to establish a prima facie case of age discrimination under the Sixth Circuit's construction of McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973), and (2) that even if Santoro had established a prima facie case, Borden successfully rebutted that case by showing that Santoro was fired for legitimate, nondiscriminatory purposes. We agree.
 
 II.
 A.
 
 18
 The district court granted summary judgment on the alternative basis that Santoro had failed to set forth a prima facie ADEA case. Summary judgment is proper when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In ruling on a motion for summary judgment the trial court must view the evidence in the light most favorable to the party opposing the motion. On review, this Court must do the same." New Jersey Life Insurance Co. v. Getz, 622 F.2d 198, 200 (6th Cir.1980).
 
 
 19
 "The evidentiary guidelines governing proof in discrimination cases were first set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) (construing Title VII), and the same analysis is generally applied in ADEA cases." Chappell v. GTE Products Corp., 803 F.2d 261, 265 (6th Cir.1986), cert. denied, 107 S.Ct. 1375 (1987) (citing Coburn v. Pan American World Airways, Inc., 711 F.2d 339, 342 (D.C. Cir.1983), cert. denied, 464 U.S. 994 (1983)). "To make out a prima facie case, the plaintiff must show that he was in the protected age group (40-70), that he was discharged, that he was qualified for the position and that he was replaced by a younger person." Id. at 266-67 (citing Ackerman v. Diamond Shamrock Corp., 670 F.2d 66, 69 (6th Cir.1982)).
 
 
 20
 Once the plaintiff has established his prima facie case, the evidentiary burden shifts to the defendant. At this point, the plaintiff has created "a rebuttable 'presumption that the employer unlawfully discriminated against' him." U.S. Postal Service Board of Governors v. Aikens, 460 U.S. 711, 714 (1983) (quoting Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981)). The defendant then bears the burden of articulating "some legitimate nondiscriminatory reason for the employee's rejection." Chappell, 803 F.2d at 265 (quoting McDonnell Douglas, 411 U.S. at 804). "Although the burden of production shifts, the burden of persuasion remains at all time with the plaintiff." Id. (citing Burdine, 450 U.S. 254-55).
 
 
 21
 If the defendant meets this burden of articulating a legitimate nondiscriminatory reason for firing the employee, then the burden again shifts back to the plaintiff to show that the defendant's stated reasons are merely a pretext for discriminatory treatment. McDonnell Douglas, 411 U.S. at 804.
 
 
 22
 A plaintiff can establish that the legitimate, nondiscriminatory reason for the employment decision articulated by the defendant employer is pretextual in one of two ways. The first is to establish by a preponderance of the evidence that the discriminatory reason was the true reason motivating the employer's conduct. Alternatively, the plaintiff can prove pretext by showing that the proffered legitimate reason was false.
 
 
 23
 Sims v. Cleland, 813 F.2d 790, 792 (6th Cir.1987) (citing Burdine, 450 U.S. at 256) (additional citations omitted). "When there is more than one reason advanced for an employer's decision, the plaintiff may prevail if he establishes that 'but for' a discriminatory motive, the action would not have been taken." Chappell, 803 F.2d at 265 (citing Wilkins v. Eaton Corp., 790 F.2d 515, 520 (6th Cir.1986), reh'g denied, 797 F.2d 342 (1986)).
 
 
 24
 Santoro argues that the district court erred in granting Borden's motion for summary judgment on the basis that she failed to establish a prima facie case. She claims that once she had shown her age (51), that she was fired on May 25, 1982, that she was qualified (through her supervisors' generally favorable evaluations), and that she was replaced by a younger person (her duties were assumed by a thirty-six-year-old secretary), the burden shifted to Borden to offer a legitimate, nondiscriminatory purpose. The district court held that while Santoro satisfied "all the McDonnell Douglas requirements for a prima facie case ... she fail[ed] to establish a prima facie case under the standards followed in the Sixth Circuit." We hold that the district court correctly applied the law of this circuit to the facts of this case.
 
 
 25
 We recently restated our position, as first expressed in Laugesen v. Anaconda Co., 510 F.2d 307, 312 (6th Cir.1975), explicitly questioning the value of applying McDonnell Douglas literally in ADEA cases: "In Laugesen, we adopted a case-by-case approach, one that would allow us to remain attentive to the realities of the business world." Simpson v. Midland-Ross Corp., 823 F.2d 937, 940-41 n. 3 (6th Cir.1987). "A mechanical application of the McDonnell Douglas guidelines might bar the suit of a worthy ADEA claimant. In other cases, an overly mechanical application could supply an ADEA plaintiff with a triable claim where none exists." Ackerman v. Diamond Shamrock Corp., 670 F.2d at 70.
 
 
 26
 Like the plaintiff in Locke v. Commercial Union Insurance Co., 676 F.2d 205, 206 (6th Cir.1982), who "did nothing more than state his conclusion that he was terminated because of his age," Santoro has failed to establish any nexus between her age and her firing other than her own unsupported assertions.
 
 
 27
 To permit this single statement to constitute a prima facie case would place on employers a burden which Congress never intended. There is no automatic presumption that every termination of an employee between the ages of 40 and 70 results in a violation of the Age Discrimination in Employment Act. Yet, to permit a plaintiff to shift the burden to the defendant of justifying a termination on such a conclusory statement would have this effect.
 
 
 28
 Id. The district court correctly held that Santoro had "not produced any facts or circumstances from which a reasonable jury could infer age discrimination." We agree with the court's conclusion that Borden's decision was based not upon age but upon "a species of insubordination," in the form of Santoro's "refusing to accept the warning, for 'stonewalling' the entire problem...."
 
 
 29
 Santoro argues that she was not told that her refusal to sign would result in her dismissal. Accepting this as true, as we must on Borden's motion for summary judgment, there is no dispute that Santoro was told to sign her final warning, that she did not sign, and that Borden's employee policies state that insubordination may result in immediate dismissal. The fact that a younger female employee had previously successfully transferred from Dr. Benton's department is virtually of no significance given the absence of evidence about that employee's personnel history and the documented evidence of Santoro's short-notice absences from work in 1982.[1]
 
 B.
 
 30
 Even if Santoro has established a prima facie case, she has failed to that show that Borden's nondiscriminatory policy was a pretext or unworthy of credence. Santoro claims that her refusal to sign or "accept" the "final warning" neither impeded her own work nor affected the work of others. However, given the uncontroverted facts that Santoro and Dr. Benton worked closely together in a one-on-one relationship and that in Santoro's absence Dr. Benton had to perform Santoro's duties, it is simply unreasonable to conclude that Santoro's actions had no effect upon the working relationship of the two.
 
 
 31
 Further, the soundness of Borden's business decision is not an issue. "[A]n employer may make a subjective judgment to discharge an employee for any reason that is not discriminatory," Ackerman v. Diamond Shamrock Corp., 670 F.2d at 70, including personality conflicts, id., and unsatisfactory performance. See, e.g., Kephart v. Institute of Gas Technology, 630 F.2d 1217, 1219 (7th Cir.1980) (per curiam), cert. denied, 450 U.S. 959 (1981).
 
 
 32
 For the foregoing reasons, we AFFIRM the district court's order granting summary judgment in favor of defendant Borden.
 
 
 
 [1]
 While Borden's employee policies state that at least a one-half hour of notice is required if an employee is not coming to work, they also state that excessive absenteeism can result in the employee's discharge. "Excessive" is a determination to be made within the discretion of an employee's supervisor