894 F.2d 1336
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Carl B. HUDGENS, Plaintiff-Appellee,
v.
MACON-TROUSDALE FARMERS COOPERATIVE, Defendant-Appellant.
 No. 89-5535.
 United States Court of Appeals, Sixth Circuit.
 Feb. 5, 1990.
 
 Before MILBURN and ALAN E. NORRIS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Macon-Trousdale Farmers Cooperative appeals the judgment awarded to Carl B. Hudgens in this action alleging violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Sec. 621 et seq., and the district court's order denying its motion for a judgment notwithstanding the verdict or for a new trial. For the reasons that follow, we reverse.
 
 I.
 A.
 
 2
 Macon-Trousdale Farmers Cooperative is a business organization formed by farmers of Macon and Trousdale Counties, Tennessee, which sells farm products and supplies. The Cooperative is controlled by a nine-member Board of Directors ("Board"), composed of six directors from Macon County and three directors from Trousdale County.
 
 
 3
 In 1963, Carl B. Hudgens was appointed to the position of manager of the Macon County Farmers Cooperative. Macon-Trousdale Farmers Cooperative was created by the merger of the Macon County Cooperative with the Trousdale County Cooperative in 1971, and Hudgens was the Cooperative's manager from the time of the merger until his discharge on August 11, 1987.
 
 
 4
 Hudgens had no employment contract with the Cooperative, and the terms of his employment as manager were set forth in Article VI, Section 2, of the Cooperative's By-Laws:
 
 
 5
 Section 2. Employment of manager.--The Board of Directors shall have power to employ a manager, define his duties, fix his compensation, and to dismiss him with or without cause at any time.... The manager shall have charge of the business of the association under the direction of the Board of Directors. No director shall serve as manager.
 
 
 6
 Plaintiff's Exhibit 1, at 18-19.
 
 
 7
 The events leading to Hudgens' discharge were apparently precipitated by certain Board members' dissatisfaction with Hudgens' handling of the retirement of Earl Dies, manager of the Trousdale County store in Hartsville, Tennessee. In July 1987, Hudgens had a conversation with Dies during which he asked if Dies was considering retirement. Dies, who was sixty-one years of age and suffering from arthritis, responded that he hoped to work until age sixty-five. Dies testified that Hudgens told him there was a boy [Billy Maxwell] in the trainee program who needed to be given a position of employment with the Cooperative. Hudgens suggested that Dies could retire early due to disability, and Hudgens later informed Dies of the amount of money he would receive by taking early retirement. Dies retired on July 31, 1987. One day later, Hudgens appointed Billy Maxwell to replace Dies as the manager of the Trousdale County store, without prior consultation with the Board.
 
 
 8
 Hudgens soon learned that the three Trousdale County Board members were displeased with Dies' retirement, and Hudgens requested a special meeting of the Board be convened to discuss the situation. At the August 4, 1987, Board meeting, Hudgens explained the circumstances surrounding Dies' retirement, and he answered questions from Board members. Board members told Hudgens that he had mishandled Dies' retirement, and Hudgens acknowledged his mistake and apologized for not consulting with the Board prior to taking the action. Hudgens believed his explanation satisfied the Board members, and no action was taken to discharge him at the August 4 meeting.
 
 
 9
 On August 8, 1987, the Saturday following the August 4 meeting, Darrell Law, Chairman of the Board, saw Hudgens at the Macon County store in LaFayette, Tennessee, and the two men discussed the August 4 meeting. Law testified that during the course of this conversation he asked if Hudgens had the same retirement program as Dies. In contrast, Hudgens testified that Law asked, "Aren't you old enough to retire, draw any kind of pension, any kind of disability, or any kind of insurance?" Hudgens also testified it was on Monday, August 10, 1987, rather than Saturday, August 8, that Law inquired about his age.
 
 
 10
 A majority of the Board wanted to meet again to discuss Hudgens' status as manager, and Law called a special meeting of the Board for August 10, 1987. On the date of the meeting, Law stopped by the Macon County store to pick up the keys to open the store for the meeting that night. Law told Hudgens that the Board was meeting to discuss his status as manager, and he did not invite Hudgens to attend the meeting. Hudgens testified that it was during this conversation that Law inquired about his age and the possibility of retirement.
 
 
 11
 During the August 10 meeting, Board members expressed dissatisfaction with Hudgens' handling of Dies' retirement, his failure to follow policies and directives of the Board, his disparate treatment of employees, and his showing favoritism toward certain customers in pricing. Two Board members urged that the Cooperative needed a change of direction, and one Board member said that if Hudgens was not fired, the Cooperative would lose the services of Ricky Rather, the twenty-eight-year-old assistant manager of the Cooperative. Hudgens' age was not discussed at this meeting.
 
 
 12
 After a lengthy discussion, the Board voted 6-2 in favor of firing Hudgens. The two Board members who voted against firing Hudgens resigned from the Board because of their disagreement with the majority vote. Chairman Law, who did not vote, was selected to tell Hudgens of the Board's decision. The two Board members who resigned testified that Law said the Board needed to come up with an excuse or reason to give for terminating Hudgens. Law testified that many views had been expressed at the meeting, and he needed a reason to give Hudgens for his discharge.
 
 
 13
 The morning after the August 10 meeting, Law went to the Macon County store to inform Hudgens of the Board's decision. When Hudgens asked why he was fired, Law said, "[N]o particular reason, but many reasons." At the next Cooperative shareholders' meeting, Law gave the same answer when asked why Hudgens had been fired, and added that the Board was dissatisfied with Hudgens' management of the Cooperative. At the time of his discharge, Hudgens was fifty-five years of age. Hudgens was replaced by Ricky Rather, the twenty-eight-year-old assistant manager, and Rather was later replaced by a thirty-eight-year-old man.
 
 B.
 
 14
 Hudgens filed the present action on July 7, 1988, alleging that the Cooperative discriminated against him on the basis of age in violation of the ADEA by discharging him on August 11, 1987. The case was tried to a jury on January 12 and 13, 1989. The jury returned a verdict for Hudgens finding that the Cooperative had discriminated against him by terminating his employment in violation of the ADEA, and the jury awarded damages in the amount of $197,763. After dismissing the members of the jury, the district judge announced that if the Cooperative filed a motion for judgment notwithstanding the verdict, he would grant it.
 
 
 15
 On January 17, 1989, the clerk entered an order in accordance with the jury's verdict, awarding a judgment to Hudgens in the amount of $197,763. On January 24, 1989, the Cooperative filed a motion for judgment notwithstanding the verdict or for a new trial. On March 22, 1989, Judge Morton denied the Cooperative's motion, and this timely appeal followed.
 
 
 16
 The principal issues on appeal are: (1) whether the district court failed to properly and adequately instruct the jury on the burden of proof in an ADEA case, and (2) whether the district court erred by denying appellant's motion for judgment notwithstanding the verdict or for a new trial.
 
 II.
 A.
 
 17
 In its brief, the Cooperative first argues that the district court failed to properly charge the jury regarding the burden of proof in an ADEA case. However, at oral argument, counsel for defendant-appellee Hudgens expressly waived this issue.
 
 B.
 
 18
 The Cooperative also contends that the evidence is insufficient to support the jury's verdict for Hudgens, and that the district court erred by denying its motion for judgment notwithstanding the verdict or for a new trial. However, the Cooperative makes no argument regarding the denial of a new trial. Therefore, any error alleged regarding denial of a new trial is considered abandoned on appeal. McMurphy v. City of Flushing, 802 F.2d 191, 198-99 (6th Cir.1986).
 
 
 19
 When reviewing a grant or denial of judgment notwithstanding the verdict, we apply the same legal standard used by the trial court. Chappell v. GTE Products Corp., 803 F.2d 261, 265 (6th Cir.1986), cert. denied, 480 U.S. 919 (1987). "A judgment notwithstanding the verdict is a question of law that is freely reviewable on appeal. The issue raised by a j.n.o.v. is whether there was sufficient evidence to raise a question of fact for the jury." Id. "In determining whether the evidence is sufficient to be sent to the jury or to support a jury verdict, the evidence, and reasonable inferences therefrom, is to be viewed in the light most favorable to the non-moving party and the court must not consider the credibility of witnesses nor weigh the evidence." Wilkins v. Eaton Corp., 790 F.2d 515, 522 (6th Cir.1986). To establish liability under the ADEA, a plaintiff must show by a preponderance of the evidence that age was a determining factor in the employer's decision. Wilkins, 790 F.2d at 520. "When there is more than one reason advanced for an employer's decision, the plaintiff may prevail if he establishes that 'but for' a discriminatory motive, the action would not have been taken." Chappell, 803 F.2d at 265. "Even if one could conclude from a very liberal reading of the record that a scintilla of evidence of age discrimination was found, that would nonetheless be insufficient to support a jury verdict." Id. at 268.
 
 
 20
 The shifting burden of production analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973), is generally applied in ADEA cases. The three-step procedure for evaluating the evidence in an ADEA case first requires the plaintiff to establish his prima facie case, then shifts the burden of production to the defendant to articulate a legitimate nondiscriminatory reason for the employee's discharge, and, finally, permits the plaintiff to show that the defendant's proffered reason is pretextual. Chappell, 803 F.2d at 265. "Although the burden of production shifts, the burden of persuasion remains at all times with the plaintiff." Id. We have rejected strict adherence to the McDonnell Douglas criteria because "an overly mechanical application could supply an ADEA plaintiff with a triable claim where none exists." Ackerman v. Diamond Shamrock Corp., 670 F.2d 66, 70 (6th Cir.1982).
 
 
 21
 In terms of the McDonnell Douglas analysis, the present case is at stage three. At this stage, the plaintiff's burden of production on pretext essentially merges with his burden of persuasion to show discrimination on the basis of age. Wilkins, 790 F.2d at 522. To establish his claim of age discrimination, Hudgens principally relies upon (1) Law's inquiry about his age and retirement, (2) a statement by one of the Board members at the August 10 meeting that Ricky Rather, the twenty-eight-year-old assistant manager, would quit unless Hudgens was fired, and (3) Law's statement at the August 10 meeting that he needed an excuse or reason to give for terminating Hudgens. Viewing the evidence in the light most favorable to Hudgens, it is insufficient to support the jury's verdict.
 
 
 22
 Law's inquiry about Hudgens' age and retirement is insufficient evidence of discrimination. "It is clear that not every comment concerning a person's age presents direct evidence of discrimination." Young v. General Foods Corp., 840 F.2d 825, 829 (11th Cir.1988), cert. denied, 109 S.Ct. 782 (1989); see, e.g., Barnes v. Southwest Forest Indus. Inc., 814 F.2d 607, 610-11 (11th Cir.1987) (defendant's statement to plaintiff that he would have to take another physical examination "and at your age, I don't believe you could pass it," was not direct evidence of discrimination). Law's inquiry is "not directly probative of an intent to discriminate." Young, 840 F.2d at 829 (emphasis in original). "Instead, it is a case where the plaintiff has inferred that certain facially neutral comments referred to his age in a discriminatory fashion." Id. (emphasis in original). Furthermore, Law's inquiry is not probative of age discrimination by the Cooperative because Law did not participate in the vote to discharge Hudgens. Hudgens was fired by a majority vote of the Board, with Law not voting. Therefore, Law's inquiry about Hudgens' age does not establish discrimination on the basis of age.
 
 
 23
 The statement made by one Board member at the August 10 meeting that if Hudgens was not fired, the Cooperative would lose the services of Ricky Rather, the younger employee who replaced Hudgens, also fails to establish age discrimination. In the first place, "the mere fact that an older employee is replaced by a younger one does not permit an inference that the replacement was motivated by age discrimination." La Montagne v. American Convenience Products Inc., 750 F.2d 1405, 1413 (7th Cir.1984). But more importantly, testimony at the trial established that only one Board member made the statement about losing the services of a younger employee. "That a member of the Board wanted a younger man as [Hudgens'] replacement does not mean that he was terminated because of his age." Simmons v. McGuffey Nursing Home, Inc., 619 F.2d 369, 371 (5th Cir.1980) (emphasis in original). Similarly, one Board member's concern about losing the services of a younger employee is not evidence that Hudgens was terminated because of his age.
 
 
 24
 Law's statement that he needed an excuse or reason to give for terminating Hudgens also fails to establish discriminatory intent. Hudgens argues that Law's statement is evidence that the reasons offered for his discharge are pretextual. However, the Cooperative does not have to prove that the proffered reasons actually motivated its decision. Rather, it "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Chappell, 803 F.2d at 266 (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 257 (1981)). "[A]n employer may make a subjective judgment to discharge an employee for any reason that is not discriminatory." Ackerman, 670 F.2d at 70 (quoting Walter v. KFGO Radio, 518 F.Supp. 1309, 1314 (D.N.D.1981)). Moreover, appellant's By-Laws expressly provide that Hudgens may be dismissed from his position as manager by the Board "with or without cause at any time." Plaintiff's Exhibit 1, at 18-19. Law's statement does not evidence an intent to mask age discrimination, particularly since Hudgens' age was not discussed at the August 10 meeting. The statement is simply not "evidence from which a reasonable jury could conclude that age was the more likely reason for [Hudgens'] discharge, rather than merely a speculative possibility." Wilkins, 790 F.2d at 523 (emphasis in original).
 
 
 25
 In sum, the evidence in this case is insufficient to permit an inference that age was a determining factor in Hudgens' termination. Viewing all the evidence and reasonable inferences drawn therefrom in the light most favorable to Hudgens, "the result is a mere scintilla of evidence from which no rational jury could have found a violation of the ADEA." Wilkins, 790 F.2d at 523.
 
 III.
 
 26
 The judgment of the district court is REVERSED, and this case will be REMANDED with instructions to enter judgment notwithstanding the verdict in favor of Macon-Trousdale Farmers Cooperative.