909 F.2d 1482
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Olga BOIERU, Plaintiff-Appellant, Cross-Appellee,
v.
CUYAHOGA COUNTY LIBRARY UNION and Service Employees
International Union, District 925,
Defendants-Appellees, Cross-Appellants.
 Nos. 89-3338, 89-3343 and 89-3437.
 United States Court of Appeals, Sixth Circuit.
 Aug. 1, 1990.
 
 Before WELLFORD and BOGGS, Circuit Judges, and HORACE W. GILMORE*, District Judge.
 I. BACKGROUND
 WELLFORD, Circuit Judge.
 
 
 1
 The plaintiff, Olga Boieru, filed a complaint with a jury demand against two unions, naming as defendants Cuyahoga County Library Union ("CCLU") and the Service Employees International Union, District 925, AFL-CIO ("District 925")[1]. The plaintiff alleged that the defendants intentionally discriminated against her on the basis of age and national origin under the Age Discrimination in Employment Act of 1967, 29 U.S.C. Secs. 621 et seq. ("ADEA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e et seq. ("Title VII").
 
 
 2
 After extensive discovery and a jury trial, the district court granted defendants' motion for a directed verdict on the plaintiff's national origin claim. Plaintiff has not appealed from this ruling. The court denied defendants' motion for a directed verdict on plaintiff's ADEA claim. Prior to submitting the case to the jury, however, the district court granted District 925's motion to dismiss, concluding that District 925 was not a successor union.
 
 
 3
 The jury returned a verdict in favor of plaintiff and against CCLU on the age discrimination claim, awarding her $93,157.23 in back pay and other benefits and an equal amount of liquidated damages. The district court reduced the award by $41,035, a settlement amount which plaintiff received from her employer. The district court also overruled defendant's motion for judgment notwithstanding the verdict.
 
 
 4
 Plaintiff then filed a request for attorney fees. She requested a lodestar amount of $83,400, an enhancement of 33% of the lodestar amount ($27,522), and $8,774.77 in costs and expenses. The district court, without explanation, awarded plaintiff $60,000 as reasonable fees and costs. Defendant filed a motion requesting the court to explain the reduction in fees, but the motion was denied. Both plaintiff and CCLU filed timely notices of appeal.
 
 
 5
 II. TIMELINESS OF CLAIM AND PROCEDURAL DEFICIENCIES
 
 
 6
 The plaintiff was discharged on September 13, 1984. Her grievance under her union contract, as was known to her,[2] was to be submitted within ten calendar days. (September 23 was a Sunday, so plaintiff should have filed it with the Board by September 24). She mailed the grievance on September 21 (Friday), and the union did not receive it until September 25; it was not delivered to the employer Library until the next day, September 26, two days late. This may have been a basis for refusal to consider the grievance further. See also Boieru's letters of November 7 and December 10, 1984 to the CCLU president (plaintiff's exhibits 135 and 140). There also was a serious question as to whether the grievance was submitted to the proper union supervisor, as provided in the union contract, within the time limit.
 
 
 7
 Plaintiff filed a charge with the EEOC on March 14, 1985, naming only the "Cuyahoga Cty. Library Union" as the offending party. (CCLU affiliated with District 925 the preceding January, but plaintiff never named District 925 as a responsible party). The failure to include District 925 is a sufficient procedural basis for dismissal of the claim made against that party unless there is a "clear identity of interest" between the party not named in the charge and the party named in the charge. Romain v. Kurek, 836 F.2d 241, 245 (6th Cir.1987).
 
 
 8
 In her amended complaint, plaintiff asserted that she was "issued a notice of right to sue on or about December 26, 1985, and commenced her proceedings against Defendants within 90 days." The record reflects, however, that she did not file her original complaint until April 8, 1986. See record and plaintiff's brief at 1. The filing was not made until at least 102 days after the right to sue letter was issued. Although not an absolute jurisdictional bar, this failure to file her suit in a timely fashion subjects the suit to dismissal absent a compelling showing of strong equitable reasons for the late filing. Brown v. Mead Corp., 646 F.2d 1163, 1165 (6th Cir.1981). No such showing has been made in this case.
 
 
 9
 The procedural deficiencies in this case would ordinarily be sufficient to affirm the district court's dismissal as to District 925 and to grant judgment for CCLU despite the jury verdict. We proceed, however, to a consideration of the merits to reinforce our conclusion to reach this result.
 
 III. MERITS OF THE CLAIM
 
 10
 Boieru, a native Romanian who became a citizen of this country in 1968, was a professional librarian employed by the Cuyahoga County Library from 1969 until her discharge in September of 1984 at the age of 59. CCLU became the exclusive bargaining representative of library employees in April of 1984. The collective bargaining agreement provided for a five-step grievance procedure under which the final step was binding arbitration before a neutral arbitrator. The officers of CCLU were employees of the Library and received no compensation from the union.
 
 
 11
 Boieru claimed that CCLU discriminated against her in its handling of her grievance. The EEOC then issued plaintiff a right to sue letter against CCLU. Plaintiff originally filed a complaint alleging discrimination on the basis of age and national origin against CCLU only. She later amended her complaint to name District 925 as well, but she did not amend her EEOC charge to include District 925.
 
 
 12
 Boieru and three library patrons testified on her behalf at trial. Each testified about Boieru's good qualities as a librarian, but no co-worker nor any supervisor testified favorably for plaintiff. Indeed, one co-worker who was called by Boieru testified unfavorably, and numerous other library employees testified on behalf of the union to similar effect.
 
 
 13
 Library worker witnesses testified generally about Boieru's negative attitude, her inability to follow supervisors' orders, her suspensions, her disciplinary warnings, all of which apparently culminated in her discharge. Boieru's response to the defendants' evidence was her own version of job performance and her theory that her co-workers' and supervisors' criticisms were unjustified and constituted a conspiracy against her.
 
 
 14
 The evidence at trial showed that Boieru was suspended in December of 1983 for three days as a result of negative work evaluations and again in February of 1984 for five days for insubordination. The latter suspension was accompanied by a warning that further disciplinary problems would result in her dismissal. In April of 1984, plaintiff's employer gave her "performance improvement guidelines," and told her that she needed to abide by them; otherwise, she would be discharged. Her supervisors continually warned Boieru about consequences of her poor evaluations and her inability to get along with co-workers until her discharge on September 13, 1984. Despite Boieru's disagreement about the evaluations, no reasonable juror, in our view, could determine but that plaintiff had been disciplined and recently warned about performance before she was terminated.
 
 
 15
 At the meeting at which plaintiff was informed she was being discharged, plaintiff was given a copy of a grievance form, a copy of the collective bargaining agreement, and advised her that she must file her grievance under the CBA. Plaintiff does not deny that she was to file such grievance within ten days from September 13, 1984, as specified in the CBA. In addition, Boieru was given the name and telephone number of a union official in case she needed assistance. On September 17, 1984, a union official telephoned inquiring as to whether plaintiff needed help in filling out the grievance form. Boieru responded that she needed no help in preparing the form. Plaintiff did, however, ask for help in obtaining documentation from her employer regarding her termination. On September 20, 1984, moreover, she asked another union official to help her obtain certain documentation. During this period, the CCLU's attorney performed legal research regarding plaintiff's discharge.
 
 
 16
 On September 21, 1984, plaintiff mailed her grievance, which was received by a union official on September 25, 1984, two days after the ten-day deadline. The union individual who received the grievance telephoned plaintiff and advised her that it would be delivered to the union president after she got off work that evening. It was submitted to the employer Library the next day.
 
 
 17
 The Library did not respond to the grievance but requested Boieru to file a next step grievance. Plaintiff contacted the union's attorney on October 11, 1984 and again requested certain employer documentation, which was obtained and given to her. The union's executive board met on October 23, 1984 to discuss plaintiff's grievance but reached no decision at this meeting. The following day, plaintiff's step four grievance was denied on the grounds that the prior step three grievance was not timely filed and that the Library had just cause for terminating her. Twelve of the fifteen of plaintiff's co-workers submitted a petition to the union agreeing with the Library's termination of plaintiff; interestingly, all were of the same ADEA age eligibility as plaintiff.
 
 
 18
 The union executive board met again on November 1, 1984 and decided not to pursue plaintiff's grievance to arbitration, citing the same reasons for denying her step four grievance. The union advised Boieru that it would not submit her grievance to arbitration on November 5, 1984.
 
 
 19
 CCLU became affiliated with District 925 of the Service Employees International Union on February 10, 1985, and changed its name to Cuyahoga County Library Union Chapter of District 925 ("CCLU 925"). Both in form and in practice, District 925 and CCLU 925 maintained separate identities in accordance with the affiliation agreement. Prior to plaintiff's charge dated March 14, 1985 with the EEOC, CCLU and District 925 held negotiations regarding the proposed affiliation. Those representing the respective unions were not affiliated with each other in any way previously. The unions' negotiators testified that while matters of importance were discussed at the negotiation meetings, no one present at those meetings could recall the specifics of any discussion regarding plaintiff's possible discrimination suit.
 
 
 20
 IV. AGE DISCRIMINATION--SUFFICIENCY OF EVIDENCE
 
 
 21
 CCLU contends that there was insufficient evidence from which a jury could find that it discriminated against the plaintiff on the basis of her age. The district court found:
 
 
 22
 She offered, however, evidence tending to show that CCLU's [the union's] handling of its only other grievance, that of the younger Duffy, was initially more thorough than was the handling of Boieru's. There was also evidence that the untimeliness of Boieru's grievance may have resulted from the union's mishandling of it. Finally, Boieru put into question the asserted union belief that the grievance was without merit; for example, she, with apparent success in front of the jury, rebutted her employer's charge that her retention of certain reference books was indicative of incompetence....
 
 
 23
 We find no case in which a union member filed an action under ADEA against her union, alleging discrimination because it processed a grievance of a younger worker more efficiently than the charging party's.[3]
 
 
 24
 The district court below articulated what it felt were the elements of plaintiff's cause of action which the plaintiff had to prove:
 
 
 25
 (1): That she was between the ages of 40 and 70,
 
 
 26
 (2): Her grievance was not taken to arbitration,
 
 
 27
 (3): That but for the union's failure to take her grievance to arbitration, she would have been successful at arbitration,
 
 
 28
 (4): That age was a determining factor in her union's decision not to take her grievance to arbitration.
 
 
 29
 Because plaintiff was within the protected class and because CCLU 925 did not take her grievance to arbitration, the district court found that the jury need consider only the third and fourth elements. We conclude that plaintiff failed to establish either the third or the fourth element above listed.
 
 
 30
 a. Arbitration element
 
 
 31
 The only evidence that plaintiff offered that might tend to show that she would have been successful at arbitration was that the Library was incorrect in its assertion that plaintiff's retention of certain reference books displayed incompetence. Defendant offered overwhelming evidence that plaintiff was terminated for just cause and that she could not have been successful at arbitration regardless of any age consideration. Witnesses testified about their personal knowledge of plaintiff's inability to get along with her co-workers; of plaintiff's treating her friends preferentially; of plaintiff's rudeness to patrons; of plaintiff's failure to follow written orders from her supervisors; and of plaintiff's verbal abuse of co-workers. The Ohio Bureau of Employment Services, the Cuyahoga County Court of Common Pleas, and the Ohio Court of Appeals all found that just cause existed for plaintiff's termination. Although not determinative, this constitutes strong and compelling evidence of a just cause discharge. Plaintiff's treatment under these circumstances cannot result in a finding of age discrimination. See Sahadi v. Reynolds Chemical, 636 F.2d 1116 (6th Cir.1980).
 
 
 32
 Jury control devices such as judgment n.o.v. or directed verdict have been recognized by courts as applicable in certain age discrimination cases due to the possibility that sympathy for the plaintiff may present an overriding but impermissible factor in a jury verdict for plaintiff.
 
 
 33
 Chappell v. GTE Products Corp., 803 F.2d 261, 265 (6th Cir.1986), cert. denied, 480 U.S. 919 (1987). In light of the strong evidence presented by defendant and the absence of plaintiff's proof, we believe that no rational juror could have found that plaintiff would have been successful at arbitration.[4] Thus, the district court erred in not granting defendant's motion for a j.n.o.v.
 
 
 34
 b. Age--a determining factor?
 
 
 35
 The same evidence described above also dispels any notion that age was a determining factor in the union's failure to process the grievance to arbitration. The disparate treatment theory offered by the plaintiff is simply insufficient as a matter of law. Duffy was the only other employee that had filed a grievance prior to September of 1984. Plaintiff contended that Duffy, a former employee who was not within the ADEA protected class, was treated better than she because he was younger. Duffy was a maintenance worker who was discharged because he had a poor driving record, and the library's insurance company refused to insure him. Duffy filed a timely grievance. Legal research was performed to determine if the library had just cause for terminating Duffy. Because Duffy withdrew his grievance, no decision was ever made on whether to send his grievance to arbitration. Plaintiff contends that she was not given such favorable treatment as Duffy because of her age. We find no relevant comparison for this single other grievance.
 
 
 36
 There is nothing to suggest that even if there were a difference in handling the Duffy and Boieru grievances that defendant was motivated in any way by considerations of age or by any improper discriminatory reason. There is no real showing that plaintiff's grievance was processed in any different fashion or with less attention than was given the other grievance the union handled.
 
 
 37
 There is no indication that older workers were the subject of discrimination by the employer or by the union. Plaintiff submitted and relied on no statistical evidence to this effect. During argument on defendant's motion for a directed verdict, plaintiff's counsel conceded that there was no direct evidence to this effect but relied on "sufficient circumstances." We find no evidence that age played any significant role in Boieru's termination. Under such circumstances, a verdict should have been directed. Ridenour v. Lawson Co., 791 F.2d 52 (6th Cir.1986); Wilkins v. Eaton Corp., 790 F.2d 515 (6th Cir.1986); Simpson v. Midland-Ross Corp., 823 F.2d 937 (6th Cir.1987).
 
 
 38
 Judicial review of a union's decision not to submit a grievance to arbitration is not plenary and to prevail plaintiff must show bad faith or something akin to gross neglect or indifference. Substantial deference should be afforded the union's decision
 
 
 39
 if a union's decision that a particular grievance lacks sufficient merit to justify arbitration would constitute a breach of the duty of fair representation because a judge or jury later found the grievance meritorious, the union's incentive to settle such grievances short of arbitration would be seriously reduced.
 
 
 40
 Vaca v. Sipes, 386 U.S. 171, 192-93 (1967).
 
 
 41
 Because the plaintiff failed to prove that the union discriminated against her on the basis of her age, we find no need to address the other assignments of error. We also need not address the question of liability of District 925.
 
 
 42
 For the reasons indicated, we find no real jury issue presented based on the facts in this record. We REVERSE the award rendered for plaintiff on the ADEA claim and conclude that judgment should be entered for CCLU [or CCLU 925]. We AFFIRM the judgment entered for District 925 on this claim.
 
 
 
 *
 THE HONORABLE HORACE W. GILMORE, Judge, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Boieru alleged that District 925's affiliation with CCLU created a successor union ("CCLU 925")
 
 
 [2]
 Boieru conceded that she had read the entire grievance procedure at the time. J/A 928. She conceded also that John Lonsak, a regional manager, told her that she had ten days to file the grievance. J/A 930
 
 
 [3]
 There are cases that address a situation where the union and the employer actively engage in a discriminatory plan to draft a collective bargaining agreement that adversely affects older workers to the benefit of younger workers, but that is not the situation here. In this case, the allegedly unlawful act is the alleged discriminatory handling of the grievance. Also, this is not a hybrid Sec. 301 claim
 
 
 [4]
 The district court found that with respect to her Title VII claim, Boieru "did not follow the directions of her supervisors, and hence was insubordinate. Thus just cause existed for her discharge, and arbitration would not have been successful."