Lawrence H. JACKSON, II, Plaintiff-Appellee,

v.

SHELL OIL COMPANY, a Delaware corporation, Defendant-Appellant.

No. 82–3040.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 4, 1983.

Decided March 25, 1983.

John D. Burns, Portland, Or., Steven J. Killworth, Houston, Tex., for defendant-appellant.

James H. Clarke, Spears, Lubersky, Campbell & Bledsoe, Portland, Or., for plaintiff-appellee.

Before FERGUSON, BOOCHEVER and NORRIS, Circuit Judges.

FERGUSON, Circuit Judge:

Defendant Shell Oil appeals from the district court's denial of motions for judgment notwithstanding the verdict following a jury verdict for the plaintiff under the Age Discrimination in Employment Act. 29 U.S.C. §§ 621–34. Shell contends that there is not substantial evidence in the record to support the jury's determination, first, that Shell discriminated on the basis of age and, second, that the plaintiff made reasonable efforts to mitigate his damages. We affirm the district court.

FACTS:

Lawrence Jackson lost his job as a sales representative in Shell's animal health business when Shell sold the business to the

Diamond Shamrock Corporation in 1979. In September 1978, secret negotiations for the sale began. Diamond wanted to purchase a "going concern" and therefore wished to employ most of the workers currently with the business, especially the salespeople. It therefore agreed to offer Shell's employees comparable salaries, benefits, and seniority. Shell agreed, with a few exceptions for the most part irrelevant here, to terminate the animal health personnel as Shell employees. A relevant exception was Ann Wendell, a sales representative, who had previously expressed a desire to transfer out of sales.

In November, while the negotiations were still going on, the animal health salespeople met because of rumors that something might soon happen to the company. At that meeting Carroll Whitney, Shell's Agri-Business Sales Manager, told those present that if any changes were made there would be many opportunities to transfer elsewhere within the defendant's organization. In December 1978, Diamond signed a letter of intent to purchase the animal health business.

On January 3, 1979, Shell called a meeting in St. Louis at which it announced the sale to its animal health employees. At the meeting, Jan Oostermeyer, the General Manager of Shell's Chemical Division, who had negotiated the sale, informed the assembled sales force that Diamond wished to purchase the business as a going concern and would therefore want to hire them. He said that Shell had already contacted those employees whom it wanted to retain and that for the others there would be no further employment with Shell. He then turned the meeting over to Carroll Whitney, who had accompanied him to St. Louis, for a question and answer period.

In the course of that period, a sales representative asked about the possibility of transfers within Shell. Whitney replied:

The reason we cannot transfer you into other departments and divisions in Shell is because we can go out and hire younger people, better qualified, from colleges and universities and pay them $16,000 rather than $30,000.

When Whitney was reminded of his November statement that transfers would be available for good performers, he denied having made it. Asked about applications for re-employment, Whitney said:

[B]ut remember, you will be put into the same pile as the younger people from colleges and universities that we can hire for $16,000.

Oostermeyer testified at trial that he attempted to "modify or qualify" Whitney's statements, but did not offer any specific rebuttal. No public retraction was ever made.

The meeting continued with a talk by a Diamond representative who confirmed his company's desire to continue the employees present essentially in their current jobs. A pamphlet was distributed comparing the benefits of the two companies. Plaintiff Jackson asked the speaker whether Diamond could give him assurances that Diamond would not demote him, terminate him, or reduce his salary. The Diamond representative replied, "You have no assurances."

Shortly after this meeting, Jackson told his immediate superior, Dick Wooley, that he would not discuss employment opportunities with Diamond. Wooley attempted to persuade him to change his mind, and over the course of the next few months several Shell superiors joined Wooley's effort and, at various times, told Jackson privately that the reasons for denying transfers which Whitney had given at the January meeting were inappropriate or untrue. Nonetheless Jackson continued to refuse a meeting with Diamond. His reasons for this decision were (1) that it was doubtful that Diamond could make a success of the business, (2) that Diamond's benefits, and especially its savings plan, which was important to him, were not comparable to those he received from Shell, (3) that because of his advanced age and high salary Diamond might fire or demote him, and (4) that he had never been personally contacted by Diamond but had only been informed of their interest by Shell. Jackson maintained this position un-

til April 11, 1979, when the sale was completed and he was discharged.

At the time of his termination, Jackson was forty-three years old, had twelve years of experience with Shell as a sales representative, and was earning $28,000 a year. He had been a senior sales representative for two years, a position in which he trained others. He was the oldest and longest employed sales representative in animal health and his work was highly regarded. He repeatedly made transfer requests between January 3 and April 11, 1979. They were denied.

Only one animal health sales representative was transferred. On April 1, Ann Wendell, a thirty-year-old woman who had had an indifferent record of performance as a sales representative for two and a half years was transferred to another sales-related job within Shell. She was the only sales person retained by the defendant.

Following his discharge, plaintiff Jackson sought comparable sales work in the Portland area but was offered only entry level positions. He had possessed a real estate license for several years and decided to go into that business. He earned $20,000 in gross receipts in his first year, but because of generally difficult economic conditions, he has earned little since.

In February 1980, Jackson brought an age discrimination suit against Shell. A jury returned a verdict of $85,000 in his favor and made a special finding that he had adequately attempted to mitigate his damages. Shell moved for judgment NOV with regard to liability and mitigation, which was denied, and now appeals this ruling.

## ANALYSIS

### I.  *The Standard of Review*

In reviewing the propriety of a district court's denial of a motion for judgment notwithstanding the verdict, this court has said:

> [T]he standard is whether, when viewing the record as a whole, there is substantial evidence present that could support a finding, by reasonable jurors, for the non-

moving party. *Chisholm Bros. Farm Equipment Co. v. International Harvester Co.,* 498 F.2d 1137, 1140 (9th Cir.), *cert. denied,* 419 U.S. 1023, 95 S.Ct. 500, 42 L.Ed.2d 298 (1974). Substantial evidence is more than a mere scintilla. *Chisholm,* 498 F.2d at 1140. It must be evidence that a reasonable mind could accept as adequate to support a conclusion. *California Computer Products v. International Business Machines,* 613 F.2d 727, 733–34 (9th Cir.1979). This evidence, however, must be examined in a light most favorable to the prevailing party. *Kaplan v. Burroughs Corp.,* 611 F.2d 286, 290 (9th Cir.1979), *cert. denied,* 447 U.S. 924, 100 S.Ct. 3016 [65 L.Ed.2d 1116]. Neither the district court nor the court of appeals may reweigh the evidence. *Chisholm,* 498 F.2d at 1140.

*United States v. Harvey,* 661 F.2d 767, 772 (9th Cir.1981).

### II.  *The Motion for JNOV on Liability*

Shell asserted that the legitimate, nondiscriminatory reason for its actions, *Sutton v. Atlantic Richfield,* 646 F.2d 407, 411 (9th Cir.1981), was the desire of Diamond to buy the animal health business as a "going concern," which necessitated that the sales staff go with the business. It contended that to have transferred a sales person upon request would have encouraged others to make the same request, obligated Shell to retain the others, and thus undermined Diamond's purpose in making the purchase. Jackson replied that this reason was pretextual in the sense that "but for" Jackson's age his request for transfer would have been granted. *Cancellier v. Federated Dept. Stores,* 672 F.2d 1312, 1316 (9th Cir. 1982); *Kelly v. American Standard,* 640 F.2d 974, 984 (9th Cir.1981). As evidence of pretext, Jackson offered the transfer of Ann Wendell at the same time that his own request was denied in order to show that Shell's reason was unworthy of credence, and the statements of Carroll Whitney made at the St. Louis meeting to show that age was more likely than the stated reason to have motivated Shell's action. *Texas Dept. of Community Affairs v. Burdine,* 450

U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981); *Douglas v. Anderson,* 656 F.2d 528, 534 (9th Cir.1981).

With regard to the transfer of Ann Wendell, Shell attempts to differentiate between her granted request for transfer and Jackson's denied request on two grounds. Shell argues, first, that Wendell made her request prior to the announcement of sale on January 3, 1979 and, second, that she had expressed a desire to leave sales work, whereas Jackson had done neither. However, Wendell made her transfer request to Jan Oostermeyer very informally at a social gathering some eleven months before the sale announcement. Jackson testified that he had discussed transfer possibilities with various of his superiors throughout 1978 and that some of the posts so discussed were not in sales. The jury could reasonably have believed that Jackson's requests were equal to Wendell's and should have been handled similarly. Shell also failed to explain why granting Wendell's request for transfer did not undermine Diamond's effort to buy a "going concern" in the same way that it contended granting Jackson's would have done.

■ Only Jackson and Wendell sought transfer rather than simply accepting Shell's decision to terminate them. Of the two, the one who was less qualified, had less experience, and was substantially younger was transferred, while the other— highly qualified and the most experienced in the department but also oldest—was not. This is substantial evidence of pretext that "a reasonable mind might accept as adequate to support [the] conclusion," *California Computer Products,* 613 F.2d at 734, *quoting Janick Bros, Inc. v. American Distilling Co.,* 570 F.2d 848, 853 & n. 2 (9th Cir.1977), that but for Jackson's age his request for transfer would have been granted. *Kelly,* 640 F.2d at 984.

■ As for the Whitney statements made at the St. Louis meeting that Shell was refusing transfers because it could hire younger people for less money, the company contends that these statements must be ignored. Shell claims the statements are in-

consistent with its statistical evidence showing that it offered continued employment to a number of animal health employees over the age of forty and terminated a larger number of those who were younger. These figures are impressive. However, they beg the issue. This court does not sit to second guess juries on factual determinations. When Shell invites this court to compare the evidence of Whitney's statements with its statistical evidence of what it did, it is requesting exactly the sort of reweighing of the evidence which is not permitted in a substantial evidence review. *Chisholm,* 498 F.2d at 1140.

■ Shell also contends that Whitney's statements must be disregarded because no causal connection has been shown between him and the company's employment decisions. However, Whitney was an important Shell official. He traveled to the St. Louis meeting with Oostermeyer for the purpose of being briefed on the sale. He made his statements at a meeting called by Shell for the purpose of announcing the sale to its employees during the course of a question and answer session about the sale which he had been requested by Oostermeyer to lead. Finally, the statements were never publicly disavowed. These circumstances are sufficient to allow the matter to go to the jury. *See, e.g., Hedrick v. Hercules,* 658 F.2d 1088, 1094 (5th Cir.1981). Moreover, they are adequate to allow a reasonable jury to infer that Whitney's statements reflected his knowledge of the employment decisions at issue here. *See Lovelace v. Sherwin-Williams,* 681 F.2d 230, 241–42 (4th Cir.1982) (adopting test of "reasonable probability"). We therefore hold that Whitney's statements provide substantial evidence of pretext going to the likelihood that the defendant was motivated by considerations of age.

III. *The Motion for JNOV on Mitigation*

■ An ADEA plaintiff has a duty to mitigate damages by using reasonable care and diligence in seeking suitable alternative employment. *Sias v. City Demonstration Agency,* 588 F.2d 692, 696 (9th Cir.1978).

The defendant bears the burden of showing failure to mitigate by establishing (1) that there were suitable positions available which the plaintiff could have discovered; and (2) that he failed to use reasonable care and diligence in seeking them out. *Id.* The reasonableness of a plaintiff's efforts to mitigate is a question of fact for jury determination.

To meet its burden of showing that there were suitable alternative positions available, Shell demonstrated the presence of only one possibility, the position with Diamond. Jackson refused to apply for that job, contending that it was not "substantially equivalent" to his position with Shell. In response to a special interrogatory, the jury determined that Jackson's refusal to accept that job and instead to seek other employment was reasonable. We need not decide whether a showing of only one job possibility can fulfill the defendant's burden of establishing the presence of "suitable positions" because there is substantial evidence in the record to support a determination that the job with Diamond was not substantially equivalent to the job with Shell.

■ Jackson testified, as a salesperson with twelve years of experience in this field, that he believed that Diamond lacked the necessary expertise to make a success of the animal health products business and, indeed, by the time of trial a portion of the business which accounted for half of Jackson's sales had been shut down. He also introduced into evidence a Shell publication which characterized Diamond as "second rate." These concerns led him to believe that if he went with Diamond he might be demoted or have his salary substantially cut, things which had not happened to him in his twelve years with Shell. In addition, the parties are agreed that the savings plans of the two companies were different and that Shell's was significantly better. Jackson asserts that this benefit was of particular importance to him. Shell responds that the overall benefit package was equivalent in that such items as the income paid early retirees by Diamond were better than those paid by Shell. In making the benefit argument, however, Shell once again asks this court to reweigh evidence in a fashion which it cannot do. We therefore hold that there was substantial evidence in the record to support a jury finding that the job which Diamond may have had available for Jackson was not substantially equivalent to his job with Shell.

Given this holding, Shell was next obligated to show that Jackson's efforts to find other employment were not reasonable or diligent. We first observe that in a number of the cases relied on by the company plaintiffs who lost backpay awards had not worked at all. *See, e.g., Sangster v. United Air Lines,* 633 F.2d 864 at 868 (9th Cir.1980) (plaintiff had not worked for eight years); *Sias v. City Demonstration Agency,* 588 F.2d at 697 (plaintiff expended "minimal" effort in seeking comparable employment and instead "devoted his time and talents to the furtherance of the instant law suit"). *Cf. Sprogis v. United Air Lines,* 517 F.2d 387, 393 (7th Cir.1975) (reasonable diligence shown by at least one formal job application and the procurement of a temporary two-month job during a two-year period of unemployment).

■ It is undisputed that Jackson searched the Portland area for a comparable sales job with firms other than Diamond and found only entry-level positions. He then decided to become a real estate agent. In his first full year, he made $20,000 in gross commissions. The jury could have found that it was reasonable for a successful salesman of animal health products to go into sales of real estate, *see Cline v. Roadway Express,* 689 F.2d 481, 489 (4th Cir.1982), and that Jackson's earnings in the first year indicated that his decision was a reasonable one. The jury could also have reasonably believed that his failure to earn thereafter was due to general economic conditions in Oregon which he could not have foreseen at the time he made his decision. We therefore hold that there is substantial evidence in the record to support a jury determination that Jackson's pursuit of alternative employment was reasonably careful and diligent.

In summary, we hold that there is substantial evidence in the record supporting the jury's verdict in favor of the plaintiff. The district court is AFFIRMED in its denial of motions for judgment notwithstanding the verdict both as to liability and mitigation.