961 F.2d 1578
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
G.H. OWEN, Plaintiff-Appellant,
v.
PENTON PUBLISHING, INC., Defendant-Appellee.
 No. 91-3744.
 United States Court of Appeals, Sixth Circuit.
 April 22, 1992.
 
 Before MILBURN and SUHRHEINRICH, Circuit Judges, and COHN, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff G. Henry Owen appeals the district court's grant of summary judgment for defendant Penton Publishing, Inc., in this action alleging age discrimination in his termination from his employment under the Age Discrimination in Employment Act, 29 U.S.C. § 626(c), and also under Ohio Revised Code § 4112.99. The principal issues presented for review are: (1) whether the district court erred in finding that plaintiff failed to prove a prima facie case of age discrimination, and (2) whether plaintiff presented evidence showing genuine issues of material fact relating to the pretextual nature of defendant's articulated reason for his termination. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 Defendant is engaged in the publication of 34 trade magazines, one of which is Machine Design. Defendant employs 60 individuals in its editorial, sales, and support staff. Except for 18 sales personnel, defendant's staff is located in Cleveland, Ohio.
 
 
 3
 Machine Design is a magazine of applied technology aimed at design engineering in the original equipment market and process industries. The magazine publishes 23 issues per year as well as two annual reference volumes. The magazine's circulation includes approximately 54,000 design departments in the United States and Canada.
 
 
 4
 Plaintiff was hired by defendant as district sales manager for Machine Design on July 10, 1972. He became regional sales manager for the magazine in the mid-1970's and also sold advertising space in the magazine. From June 1988 to September 1989, plaintiff was one of four zone managers. The function of the zone managers was to design a new concept for the reference volumes published by Machine Design. Plaintiff was appointed to the zone manager position by James Zaremba, who was then the publisher of the magazine. At that time plaintiff was over fifty years of age.
 
 
 5
 From January 1978 through February 1988, Robert Chew was the publisher of Machine Design. Plaintiff admitted during his deposition that in 1986 Chew talked to him about being abusive to the clerical staff. In a 1986 meeting with Chew and Russell Herbert, the Director of Human Resources, plaintiff was told to improve his working relationship with two female clerical employees and to stop harassing them. During that same period, Chew instructed plaintiff to limit his contact with the business department of Machine Design and also indicated that plaintiff was disrupting the office.
 
 
 6
 Also during this period, plaintiff admitted that he had criticized Chew "to his face" and in conversations with John Hartnett, the Marketing Development Manager for Machine Design. In August 1986, plaintiff told others that Chew was incompetent as he disagreed with the manner in which Chew was running Machine Design.
 
 
 7
 Plaintiff also criticized Hartnett during this period. He worked closely with Hartnett but did not report directly to him. Plaintiff admitted that he told Hartnett to his face what he thought of his abilities and what he thought of him as an individual. Among this criticism was a 1987 conversation where, in front of other individuals, plaintiff told Hartnett that he "[hadn't] brought anything to the table in five years," and that he was a "wimp." J.A. 118. Plaintiff repeated this criticism of Hartnett to a Regional Vice President of Machine Design at one of the magazine's national sales meetings.
 
 
 8
 In March of 1988, James W. Zaremba became the publisher of Machine Design. Plaintiff criticized Zaremba's management style as autocratic, and he repeated this criticism to other employees including Hartnett.
 
 
 9
 In June 1989, Thomas Bordonaro, the Marketing Manager for Machine Design's reference volumes, requested information from the sales staff for the next reference volume issue. When plaintiff did not respond to the request, Bordonaro advised him in writing that his response was not optional and that it was both necessary and important. Plaintiff responded to Bordonaro, who was his superior, with a memorandum stating that Bordonaro's memorandum was "porkey" and that "you are totally inconsiderate of opinions, judgment, experience and feelings of people that have far more experience and insight than you." J.A. 55. Plaintiff sent copies of his memorandum to Zaremba and Hartnett.
 
 
 10
 In his deposition, plaintiff stated that he "blew his stack" when he received Bordonaro's memorandum because it was "out of place, strong, nasty, smart-aleck." J.A. 136. Plaintiff stated that he disagreed with the requests to the sales staff to provide information and that he had previously criticized Bordonaro's requests as inappropriate. He stated that he also vociferously told Zaremba that Bordonaro's requests were burdensome to the staff. In his deposition, Bordonaro testified that he had a need for the information. Plaintiff also stated in his deposition that he had no reason to believe that Bordonaro's memorandum was an attempt to discriminate against him because of his age.
 
 
 11
 Plaintiff wrote other memoranda to Bordonaro. In July 1989, plaintiff wrote a memorandum to Bordonaro to tell him that his "type of sales approach does not fit into my plans," and describing Bordonaro's marketing approach as "tackey." J.A. 57, 145-148.
 
 
 12
 At this point in time, Zaremba, who had been promoted to Group Vice President, and Hartnett, who had become the publisher of Machine Design, met with plaintiff on July 16, 1989, and placed him on 60-day probation notice. At the meeting plaintiff was told that he would not be considered for promotions during his probationary period and was ordered to limit communications with other employees strictly to business reasons. Plaintiff was told not to involve himself with management activities other than that pertaining to selling, and he was warned that management did not like his attitude.
 
 
 13
 The day after he was placed on probation, plaintiff spoke to James Atherton, the Senior Vice President of Publishing for defendant. Atherton was Zaremba's superior. In his deposition, plaintiff testified that Atherton told him that he was a good salesman whose mouth had gotten in the way. Atherton told plaintiff to keep a low profile. Plaintiff testified that he was not given any indication by Atherton that his probation was related to his age.
 
 
 14
 After his meeting with Atherton, plaintiff wrote a memorandum to Zaremba apologizing for his fleeting moments of insubordination. Zaremba wrote to plaintiff accepting the apology and informing plaintiff that his behavior and attitude in regard to defendant and its magazine staff would be monitored and reviewed for the time being. Plaintiff testified that he had no reason to believe that Zaremba's memorandum was motivated by reasons of age discrimination. He also admitted that Hartnett and Zaremba told him prior to his probation that his criticism of Bordonaro was not fair.
 
 
 15
 In August 1989, Joseph Fristik became the sales manager for Machine Design. In February 1990, Joseph DiFranco replaced Hartnett as publisher of Machine Design. Pursuant to defendant's system of performance evaluation, plaintiff's performance evaluation for 1989 was discussed with him at a meeting with Fristik and DiFranco. Plaintiff signed the evaluation. The evaluation noted that plaintiff had met his sales goals. It also noted that plaintiff had been placed on probation for criticizing and undermining management and management decisions. It noted that plaintiff would be monitored on a continuing basis. The evaluation also gave plaintiff the lowest possible rating, unsatisfactory, in the areas of interpersonal skills and cooperation. Plaintiff was also told at the meeting that if any more problems occurred, he would be fired.
 
 
 16
 Subsequent to this meeting, DiFranco sent a memorandum to plaintiff regarding the comments made at the evaluation meeting. Difranco informed plaintiff that he was "starting out new with me," and he also informed plaintiff that he would not "tolerate any problems you [plaintiff] produce involving the sales staff, the business staff or ... individuals at Penton." J.A. 64. The memorandum went on to state that if the problems continued in 1990, steps would be taken to terminate plaintiff. The memorandum closed with the statement, " 'the ball is in your court' there is no second chance in 1990." J.A. 64.
 
 
 17
 On May 22, 1990, however, plaintiff sent a memorandum to Ray Herzog on the Penton Publishing staff. The memorandum was critical of the sales approach for the reference volumes. Marginal comments on the memorandum show that management found the memorandum to be negative and counterproductive.
 
 
 18
 DiFranco testified in his deposition that from March 1990 until plaintiff was terminated in August 1990, disruptive incidents continued to occur. DiFranco testified that at a dinner meeting with plaintiff in June 1990, plaintiff made disparaging comments about Penton Publishing and indicated that he was not happy there.
 
 
 19
 On August 23, 1990, Kelly Coyle, Secretary to the Publisher, sent a confidential memorandum to Fristik detailing a conversation she had with plaintiff on that date. The memorandum describes the conversation as being very demeaning of the performance of the Cleveland office and particularly critical of Fristik's and DiFranco's performance.
 
 
 20
 After this, DiFranco and Zaremba recommended to Atherton that plaintiff be terminated. Atherton, who was 55 years old, agreed with the recommendation, and plaintiff, at age 54, was terminated on August 27, 1990, for insubordination and being a disruptive influence. The termination was approved by Sal Marino, Penton's President and Chief Executive Officer, who was then 71 years of age.
 
 
 21
 In his deposition, Marino testified that he received complaints about plaintiff over a long period of time. Marino testified that his philosophy was that when an employee is making a contribution, there is no reason to sever the employee unless his nuisance value or negative values exceed his contributions. Marino further testified that when Atherton recommended that plaintiff be fired in August 1990, he finally concluded that plaintiff's nuisance value had exceeded his positive contributions.
 
 
 22
 Plaintiff's termination on August 27, 1990, occurred at a meeting between Fristik, DiFranco, Zaremba, Atherton, and plaintiff. DiFranco read a memorandum to plaintiff describing the prior disciplinary actions and informing plaintiff that he was being terminated for violating the directives of his superiors. After reading the memorandum, Atherton told plaintiff that he regretted that plaintiff had to be terminated, but there was no other choice.
 
 
 23
 During his deposition, plaintiff testified that he was never mistreated at Penton. He further stated that he did not feel that he was being discriminated against on the basis of his age until the day he was terminated.
 
 
 24
 In an affidavit, Bordonaro states that on several occasions Zaremba told him
 
 
 25
 something had to be done about the older sales persons for Machine Design magazine. Mr. Zaremba said that these older sales persons had to get with the new program, new way of doing things and new directions at Machine Design. [Plaintiff] was one of the sales persons identified by Mr. Zaremba as not getting on the new program.
 
 
 26
 J.A. 88. Bordonaro also stated that as his working relationship with plaintiff continued, he came to appreciate plaintiff's style, and that although plaintiff could be critical, plaintiff had the best interests of the magazine at heart. Finally, Bordonaro stated that he never found plaintiff to be demeaning to the magazine or its personnel.
 
 
 27
 In his deposition, Bordonaro testified that he often called plaintiff a weasel and that he told Zaremba that plaintiff was not management material. He also testified that he expressed concerns to Zaremba about plaintiff's attitude. He testified that he told Zaremba that they should get plaintiff to "shut up" because he was undermining the morale of the publication. According to Bordonaro, he told Zaremba that plaintiff's criticism of management should be handled sternly, strictly or harshly. Bordonaro testified that Zaremba's comments about older sales people led him to believe that plaintiff was terminated because of his age. However, Bordonaro also testified that as late as the summer of 1990, he was telling Zaremba that he was having problems communicating with plaintiff.
 
 
 28
 After plaintiff's discharge, his duties were assumed by Thomas McIntyre, Thomas Bednar, and Bordonaro, all three of whom are substantially younger than plaintiff. In November 1990, plaintiff filed a charge of age discrimination with the Cleveland District Office of the EEOC. After sixty days passed, plaintiff brought this action in the district court.
 
 B.
 
 29
 Plaintiff filed his complaint on February 1, 1991, alleging age discrimination in employment under the Age Discrimination in Employment Act, 29 U.S.C. § 626(c), and also under Ohio Revised Code § 4112.99. Following the filing of an answer and a pretrial hearing, the matter was set for trial on August 5, 1991.
 
 
 30
 On June 13, 1991, plaintiff filed a motion for leave to file an amended complaint, seeking to add a pendent claim under state law for the alleged breach of an implied contract of employment. The motion was granted, and an amended complaint was filed on July 10, 1991.
 
 
 31
 Defendant filed a motion for summary judgment on June 19, 1991, and on July 8, 1991, plaintiff responded to defendant's motion. On August 1, 1991, the district court granted summary judgment on both the federal and state age discrimination claims. The district court declined to exercise pendent jurisdiction over the state law contract claim and dismissed the contract claim without prejudice. This timely appeal followed.
 
 II.
 A.
 
 32
 Plaintiff argues that the district court erred in granting summary judgment in favor of defendant. This court reviews a district court's grant of summary judgment de novo, using the same test as used by the district court. See Buckner v. City of Highland Park, 901 F.2d 491, 494 (6th Cir.), cert. denied, 111 S.Ct. 137 (1990). Summary judgment is proper under Federal Rule of Civil Procedure 56(c) if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988). The language of Rule 56(c) mandates the entry of summary judgment, following adequate time for discovery and upon a motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and upon which that party bears the burden of proof. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, there can be no genuine issue of material fact. Id. In such a situation, the moving party is entitled to judgment as a matter of law. Id.
 
 B.
 
 33
 Plaintiff argues that the district court erred in concluding that he had not made out a prima facie case of age discrimination, particularly in light of the affidavit of Thomas Bordonaro. Generally, this court applies the analysis used for Title VII discrimination cases to ADEA cases pursuant to McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Chappell v. GTE Prod. Corp., 803 F.2d 261, 265 (6th Cir.1986), cert. denied, 480 U.S. 919 (1987), and Danielson v. City of Lorain, 938 F.2d 681, 683 (6th Cir.1991). In an ADEA case, the plaintiff bears the initial burden of establishing a prima facie case of age discrimination by a preponderance of the evidence. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); Chappell, 803 F.2d at 265. If the plaintiff succeeds in proving a prima facie case, the burden of production shifts to the employer to rebut the prima facie case by articulating some legitimate, non-discriminatory reason for the decision to terminate an employee. See Burdine, 450 U.S. at 253; Chappell, 803 F.2d 265.
 
 
 34
 If the employer satisfies its burden of production, the burden then shifts to the plaintiff to show by a preponderance of the evidence that the legitimate reasons articulated by defendant were not its real reasons for terminating plaintiff but were pretextual. Burdine, 450 U.S. at 253; Chappell, 803 F.2d at 265. Although the burden of production shifts, the burden of persuasion in an ADEA case remains with the plaintiff at all times. Chappell, 803 F.2d at 265. To establish liability in an ADEA case, the plaintiff has the ultimate burden of proving that age was a determining factor in the employer's decision to terminate. See Blackwell v. Sun Elec. Corp., 696 F.2d 1176, 1180 (6th Cir.1983).
 
 
 35
 To establish a prima facie case, a plaintiff must show: (1) that he is a member of the protected age group, i.e., between 40 and 70 years of age; (2) that he was discharged; (3) that he was qualified for the position or that he was doing the job well enough to meet the employer's legitimate expectations; and (4) that the plaintiff was replaced by a younger person. See Danielson, 938 F.2d at 683.
 
 
 36
 It is undisputed between the parties that the first two elements of a prima facie case are satisfied in this case. Plaintiff was 54 years of age at the time he was discharged by defendant. However, the district court found that plaintiff had not made out a prima facie case because at the time of his discharge, plaintiff was not performing his job well enough to meet his employer's legitimate expectations. An employee is not performing his job at a level which meets his employer's legitimate expectations where the employee is not doing what his employer wants him to do or where his supervisors are dissatisfied with his job performance. See Ang v. Procter & Gamble Co., 932 F.2d 540, 548 (6th Cir.1991); McDonald v. Union Camp Corp., 898 F.2d 1155, 1160 (6th Cir.1990). Further, a plaintiff cannot create a material issue of fact on the question of the quality of his work merely by challenging the judgment of his supervisors. See Kephart v. Institute of Gas Technology, 630 F.2d 1217, 1223 (7th Cir.1980) (per curiam), cert. denied, 450 U.S. 959 (1981).
 
 
 37
 In this case, the evidence presented to the district court showed that plaintiff was not performing at the level of defendant's legitimate expectations. It is well documented that plaintiff was not functioning harmoniously with his other employees and that he was being critical of management as well as his fellow employees. Moreover, plaintiff was warned about these problems both orally and in writing, and he was specifically told that if these problems persisted he would be terminated. Plaintiff was terminated only after a lengthy series of steps were taken to correct his disciplinary problems. Further, plaintiff's termination was recommended by Atherton to Marino only after Atherton had turned down many other requests to terminate plaintiff in an effort to permit plaintiff to correct his problems.
 
 
 38
 Plaintiff attempts to contradict the overwhelming evidence that he did not meet the level of his employer's legitimate expectations with Bordonaro's affidavit. Plaintiff argues that the isolated, ambiguous remark attributed to Zaremba in Bordonaro's affidavit is sufficient to show that he was meeting the level of his employer's legitimate expectations. However, the overwhelming evidence shows that plaintiff had created an ongoing disruption in defendant's operations and had been warned that if his insubordination and disruptions did not cease, he would be terminated. Thus, the district court correctly concluded that plaintiff failed to show that he was meeting his employer's legitimate expectations at the time of his termination. The district court also properly concluded that plaintiff failed to establish a prima facie case of age discrimination under the McDonnell Douglas criteria.
 
 C.
 
 39
 A plaintiff may also establish a prima facie case of age discrimination by means other than the McDonnell Douglas criteria. A plaintiff can establish a prima facie case of age discrimination by using statistical information, direct evidence of discrimination, and circumstantial evidence other than that used in McDonnell Douglas. Plaintiff argues that Zaremba's statements set forth in Bordonaro's affidavit constitute direct evidence of age discrimination. However, Bordonaro's affidavit sets forth an isolated comment by Zaremba, namely, that a number of older employees had not adjusted to the new direction and new way of doing things at the magazine. However, as noted by the district court, this statement attributed to Zaremba does not identify or suggest any action that was to be taken with regard to the older individuals because of their age. In fact, no action was taken. Isolated and ambiguous statements made by supervisors which are abstract, as well as irrelevant and non-prejudicial, will not support a finding of age discrimination. See Gagne v. Northwestern Nat. Ins. Co., 881 F.2d 309, 314 (6th Cir.1989).
 
 
 40
 Furthermore, the cases relied on by plaintiff, viz., Jackson v. Shell Oil Co., 702 F.2d 197, 199 (9th Cir.1983), and Hedrick v. Hercules, Inc., 658 F.2d 1088, 1092, (5th Cir.1981), are inapposite to this case. In both cases obvious statements of age discrimination were made by high company officials of the defendants which constituted direct evidence of age discrimination. However, there is no direct evidence of age discrimination in this case. The district court did not err in finding that Bordonaro's affidavit and testimony did not constitute direct evidence of age discrimination, and it correctly concluded that plaintiff failed to make out a prima facie case of age discrimination by direct evidence.
 
 D.
 
 41
 Having concluded that the district court was correct in holding that the plaintiff failed to make out a prima facie case of age discrimination, it is not necessary for us to discuss plaintiff's claim of pretext. However, even assuming arguendo that plaintiff made out a prima facie case, he failed to show that the legitimate reason articulated by defendant for his termination was pretextual.
 
 E.
 
 42
 Further, for the reasons stated above, the district court also properly granted summary judgment for defendant on plaintiff's claim of age discrimination under Ohio law.[1] Ohio courts apply the federal evidentiary standards and guidelines applicable to claims brought under the ADEA to age discrimination claims filed pursuant to section 4101.17. See Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir.1988). See also Kohmescher v. Kroger Co., 575 N.E.2d 439, 441-43 (Ohio 1991); Barker v. Scovill, Inc., Schrader Bellows Div., 451 N.E.2d 807, 809 (Ohio 1983). Since the same evidentiary standards are applied under Ohio law to age discrimination claims under Ohio Revised Code § 4101.17 as are applied by federal courts in ADEA claims, the district court properly granted summary judgment on plaintiff's state law age discrimination claim for the same reason it granted summary judgment on plaintiff's ADEA claims.
 
 F.
 
 43
 Finally, the district court properly dismissed plaintiff's pendent state law claims without prejudice. Where a district court exercised jurisdiction over state law claims solely by virtue of pendent jurisdiction and federal claims are dismissed prior to trial, the state law claims should ordinarily be dismissed without reaching their merits. See Faughender v. City of North Olmsted, Ohio, 927 F.2d 909, 917 (6th Cir.1991) (citing United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966)).
 
 III.
 
 44
 For the reasons stated, the district court's grant of summary judgment is AFFIRMED.
 
 
 
 *
 Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Three sections of the Ohio Revised Code provide remedies for age-based employment discrimination. These are §§ 4101.17, 4112.02, and 4112.05. Plaintiff brought his action under § 4112. The McDonnell Douglas criteria apply to cases brought pursuant to § 4112 as well as § 4101.17 cases. See Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civil Rights Commission, 421 N.E.2d 128, 131 (Ohio 1981)