**John J. SCACCIA, et al., Plaintiffs,**

v.

**Valerie LEMMIE, et al., Defendants.**

No. C–3–02–53.

United States District Court, S.D. Ohio, Western Division.

May 6, 2002.

Dwight Dean Brannon, John Josephy Scaccia, Dayton, OH, for plaintiff.

Dianne Frances Marx, Rieser and Marx–3, Neil Frank Freund, Freund Freeze & Arnold–3, Leonard J Bazelak, Freund, Freeze & Arnold, Dayton, OH, for defendant.

DECISION AND ENTRY SUSTAINING PLAINTIFFS' MOTION FOR RE-MAND (DOC. # 6); CAPTIONED CAUSE REMANDED TO THE MONTGOMERY COUNTY COURT OF COMMON PLEAS; JUDG-MENT TO BE ISSUED ACCORD-INGLY; TERMINATION ENTRY

RICE, Chief Judge.

The instant litigation is brought by Plaintiff John J. Scaccia, a former attorney for the City of Dayton, due to alleged discrimination and harassment during his employment, and his subsequent termi-nation.[1] According to his Complaint (Doc. # 1),[2] Scaccia, a Caucasian male, began his employment with the City of Dayton in approximately 1985. In December of 1992, he held the position of Chief Prose-cutor. In late 1997 or early 1998, the Law Director of the City of Dayton, Mr. J. Anthony Sawyer, announced that he in-tended to retire. The City of Dayton be-gan to consider candidates to fill the vacat-ed position. Plaintiff was informed that the only criteria for the Law Director posi-tion was that the individual must have five years of municipal law experience. Scac-cia applied for the position. After a search by an executive search company, the field of final candidates was narrowed to four individuals: Scaccia, another male Cauca-sian–American, an African–American male and an African–American female. Before a hiring decision had been reached, all of the candidates, except Scaccia, had re-moved themselves from consideration.

According to Plaintiff, Defendant Valerie Lemmie ("Lemmie"), the Dayton City Manager and an African–American, and other persons in operational control of the Dayton City Government decided that an African–American should hold the position of Law Director.[3] Because Scaccia is not African–American, Lemmie allegedly be-gan to recruit African–American attorneys for the Law Director position. In Septem-ber, 1998, Lemmie announced that Defen-

---

1. Plaintiff's spouse, Cynthia Scaccia, has brought a claim for loss of consortium. Hereinafter, the term "Plaintiff" will be used to refer to John Scaccia only.

2. Plaintiff's Complaint consists of 108 pages, including more than 1000 enumerated para-graphs. It is difficult, to say the least, to summarize the particular instances of harass-ment and discrimination that Plaintiff has al-leged throughout his Complaint. According-

ly, the Court will attempt to articulate the crux of Plaintiff's allegations, without provid-ing the overwhelming detail that the Com-plaint includes.

3. Plaintiff alleges that during the last five years, a group of African–American employ-ees of the City of Dayton, led by Lemmie, has gained operational control of the Dayton City Government, and has instituted a system based on nepotism, cronyism, and corruption.

dant J. Rita McNeil ("McNeil") had been appointed as the next Law Director. McNeil is African–American and, at that time, was under the age of 40. She had no prior municipal law experience.

Following the appointment of McNeil, Plaintiff began to experience a gradual decrease in his responsibility and authority. In the Fall of 1998, Scaccia was removed as Chief Prosecutor and "temporarily reassigned" to the Law Department.[4] He was appointed Chief Administrative Counsel; however, he was not permitted to have any significant involvement in civil service and labor matters. His reassignment resulted in the loss of significant supervisory authority, and he largely was not responsible for delegating assignments to others. Plaintiff alleges that Defendants excluded him from any legal matter for which they could reasonably anticipate him to be successful and for which he could receive positive recognition. Plaintiff was excluded from meetings, discussions, and conferences, and he was "passed over" in the supervisory chain of command.[5] Scaccia was not permitted to do evaluations for the individuals who should have been reporting to him.

In the Spring of 1999, the City of Dayton announced that it was seeking to fill the position of Chief of the Criminal Division (i.e., Chief City Prosecutor) through competitive application. Scaccia applied for the position, but was not selected. Throughout 1999 and 2000, Plaintiff allegedly continued to suffer from Defendants' efforts to sabotage his career and to harm his reputation, as demonstrated by Defendants giving him menial job assignments,

isolating him from his co-workers, and excluding from discussion and control of meaningful cases to which he had been assigned. In August of 2000, Defendants developed a plan to abolish Plaintiff's position in the Law Department. In November, 2000, Plaintiff was away from work for two weeks following the birth of a daughter. McNeil gave him difficulty regarding his leave, including having an audit of his leave usage conducted.

On December 22, 2000, Scaccia was informed that his position had been abolished. Plaintiff attempted to locate another position with the City of Dayton which was vacant and for which he was qualified, so that he could transfer to another position. Although positions existed, Defendants allegedly prevented Plaintiff's attempts to transfer. In particular, Defendant William Gillispie, Deputy City Manager, allegedly told Plaintiff that he would assist him in locating a new position with the City of Dayton, but failed to do so. On April 13, 2001, Plaintiff's employment with the City of Dayton was terminated.

Before and after his termination, Plaintiff contacted the Human Resources Department of the City of Dayton in an effort to ensure that his health and dental insurance coverage would continue. Although Defendants allegedly were required to contact Aurora Administrative Solutions (presumably, the insurance plan administrator) regarding his continued coverage, they failed to do so and, furthermore, they failed to notify Aurora Administrative Solutions that his family included a new infant and a five year old child who had received open-heart surgery.

---

**4.** Plaintiff never returned to the position of Chief Prosecutor.

**5.** For example, John Danish, an attorney who held a subordinate position on the organizational charts, was put in charge whenever

McNeil was absent. Mr. Danish was also given a larger office in the front portion of the new suite of offices. Mr. Danish took on the role of Scaccia's supervisor, and assigned him to do menial tasks.

On December 31, 2001, Plaintiff brought suit in the Montgomery County Court of Common Pleas against the City of Dayton; Lemmie; McNeil; Gillispie; Douglas "Dusty" Hall, Assistant City Manager; Thomas Biedenharn, Director of Public Affairs for the City of Dayton; Jeffery Woodson, Director of Management and Budget for the City of Dayton; Mayor Michael Turner; and Dayton City Commissioners Dean Lovelace, Idotha Bootsie Neal, and Mary Wiseman,[6] setting forth twenty (20) claims for relief, to wit: (1) a state law claim for race discrimination, in violation of Ohio Rev.Code § 4112.02 (Count One); (2) a state law claim for sex discrimination, in violation of Ohio Rev. Code § 4112.02 (Count Two); (3) a state law claim for age discrimination, in violation of Ohio Rev.Code § 4112.02 (Count Three); (4) a state law claim for hostile work environment, due to race, age, and sex discrimination, in violation of Ohio Rev.Code § 4112.02 (Count Four); (5) a state common law claim for discrimination (Count Five); (6) state law claims for theft by deception, conversion of property, and fraud (Count Six); (7) a state law claim for intentional misrepresentation and fraud (Count Seven); (8) a state law claim for retaliation and discharge, in violation of public policy (Count Eight); (9) a state law claim for defamation (Count Nine); (10) a state law claim for tortious interference with business or professional relations, future or prospective employment, and economic opportunities (Count Ten); (11) a state law claim for intentional infliction of emotional distress (Count Eleven); (12) a state law claim for civil conspiracy (Count Twelve); (13) a state law claim for negli-

gent supervision and administration (Count Thirteen); (14) a state law claim for breach of contract (Count Fourteen); (15) a state law claim for equitable estoppel (Count Fifteen); (16) a state law claim for promissory estoppel (Count Seventeen); (17) a state law claim for negligent misrepresentation (Count Eighteen); (18) a state law claim for breach of the duty of good faith and fair dealing/bad faith contract (Count Nineteen); (19) a state law claim, brought by Plaintiff and Cynthia Scaccia, for loss of consortium (Count Twenty); and (20) a state law claim for punitive damages (Count Twenty–One).[7] On January 31, 2002, Defendants removed the action to this Court, alleging that this Court has federal question subject matter jurisdiction.

Pending before the Court is Plaintiff's Motion for Expedited Remand (Doc. # 2).[8] For the reasons assigned, Plaintiff's Motion is SUSTAINED.

## I. *Plaintiff's Motion for Remand (Doc. # 6)*

 The party seeking to litigate in federal court bears the burden of establishing the existence of federal subject matter jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). This is no less true where, as here, it is the defendants, rather than the plaintiff, who seeks the federal forum. *E.g., Ahearn v. Charter Twp. of Bloomfield,* 100 F.3d 451, 453–54 (6th Cir.1996). When the party asserting federal jurisdiction finds its allegations challenged, it must submit evidence substantiating its claims. *Amen v. City of Dearborn,* 532 F.2d 554, 560 (6th

---

**6.** The Complaint incorrectly spells this Defendant's last name was "Weisman."

**7.** The Complaint does not contain Count Sixteen.

**8.** Also pending before the Court are various Motions to Strike Portions of the Complaint (Doc. # 1, Doc. # 4, Doc. # 5). Because the Court concludes, *infra,* that it lacks subject matter jurisdiction over this action, it will not address these Motions.

Cir.1976). The removing defendants' burden is to prove, by a preponderance of the evidence, that the jurisdictional facts they allege are true. *Gafford v. General Electric Co.,* 997 F.2d 150, 158 (6th Cir.1993). The district court has "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat. Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990) (citations omitted). The court may consider such evidence without turning the motion into one for summary judgment. *Id.*

In his Motion for Remand, Plaintiff asserts that the present action must be remanded to the Montgomery County Court of Common Pleas on two grounds. *First,* Plaintiff asserts that not all of the Defendants have joined in the removal. *Second,* he argues that he has not asserted any federal claim in his Complaint. Plaintiff further argues, in the alternative, that if a federal question does exist, the action should be remanded, pursuant to 28 U.S.C. § 1367(c), because state law predominates over any federal question.

In their Notice of Removal, Defendants assert, without any specific factual allegations, that the Court has original jurisdiction under 28 U.S.C. § 1331. In their Opposition Memorandum (Doc. # 9), they assert that the references to federal law in the Complaint indicate that Plaintiff's claims are founded on a claim or right under the Constitution, treaties, or laws of the United States. In particular, Defendants argue that Count Eight (discharge and retaliation in violation of public policy) "arises under" federal law due to Plaintiff's references to the United States Constitu-

tion and federal statutes as a source of public policy. In addition, Defendants contend that Plaintiff's citations to federal case law in various footnotes indicate that those claims containing those footnotes are federal in nature.

## A. *Consent of All Defendants to Removal*

■ Section 1446(a) of 28 U.S.C. requires that "[a] defendant or defendants desiring to remove any civil action ... shall file ... a notice of removal." Despite the ambiguity of the term "defendant or defendants," it is well established that removal generally requires unanimity among the defendants.[9] *Balazik v. County of Dauphin,* 44 F.3d 209, 213 (3rd Cir.1995), citing *Chicago, R.I. & P. Ry. Co. v. Martin,* 178 U.S. 245, 247, 20 S.Ct. 854, 44 L.Ed. 1055 (1900)("[I]f a suit arises under the Constitution or laws of the United States, or if it is a suit between citizens of different states, the defendant, if there be but one, may remove, or the defendants, if there be more than one...."). As stated by the Sixth Circuit: "The rule of unanimity requires that in order for a notice of removal to be properly before the court, all defendants who have been served or otherwise properly joined in the action must either join in the removal, or file a written consent to the removal." *Brierly v. Alusuisse Flexible Packaging, Inc.,* 184 F.3d 527, 533 n. 3 (6th Cir.1999), *cert. denied,* 528 U.S. 1076, 120 S.Ct. 790, 145 L.Ed.2d 667 (2000).

In the Notice of Removal, Defendants indicate that "[c]ounsel for Defendants, Michael Turner and May Wiseman [sic], likewise consent to this removal." (Doc. # 1 ¶ 7). In addition, on February 1,

---

**9.** Where a separate and independent claim that would be removable if sued upon alone is joined with an otherwise non-removable claim, the defendants to that separate claim may remove the entire action, and the district court may exercise its discretion to remand all matters not within its original jurisdiction. 28 U.S.C. § 1441(c); *Andrews v. Electric Motor Sys., Inc.,* 767 F.Supp. 853, 854 (S.D.Ohio 1991)(Rice, J.). Neither Plaintiff nor Defendants has asserted that a separate and independent claim exists herein. Thus, the Court will not address this issue.

2002, two days after the removal of this action to federal court, Defendants Turner and Wiseman filed a notice, indicating their formal consent to the removal (Doc. # 3). Defendants' actions are sufficient to demonstrate that they have consented to removal, and they have provided timely written notice of that consent. Plaintiff's Motion for Remand, based on the alleged procedural defect that Defendants Turner and Wiseman have failed to consent to removal, is OVERRULED.

### B. References to Federal Law in Count Eight

In opposing Plaintiff's Motion for Remand, Defendants assert that Plaintiff has alleged a federal claim by basing his discharge or retaliation in violation of public policy claim, in part, on federal law. In determining whether a court has federal subject matter jurisdiction, the court ordinarily begins by examining the plaintiff's well-pleaded complaint. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). The "well-pleaded complaint rule" provides that "the plaintiff is the master of the complaint, that [for removal to be proper] a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Warner*, 46 F.3d at 533. After "[e]xamining only those allegations which are properly raised in a well-pleaded complaint, the court must then determine whether the substance of those allegations raises a federal question." *Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 58 L.Ed. 1218 (1914); *see Sable v. General Motors Corp.*, 90 F.3d 171, 174–75 (6th Cir.1996) ("arising under" jurisdiction existed where plaintiff's state law tort claim was premised on defendants' breach of a duty created under federal law).

In *Merrell Dow Pharmaceuticals, Inc., v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), the Supreme Court discussed the breadth of federal question subject matter jurisdiction under Article III of the United States Constitution:

> Article III of the Constitution gives the federal courts power to hear cases "arising under" federal statutes. That grant of power, however, is not self-executing, and it was not until the Judiciary Act of 1875 that Congress gave the federal courts general federal-question jurisdiction. Although the constitutional meaning of "arising under" may extend to all cases in which a federal question is "an ingredient" of the action, *Osborn v. Bank of the United States*, 22 U.S. 738, 9 Wheat. 738, 823, 6 L.Ed. 204 (1824), we have long construed the statutory grant of federal-question jurisdiction as conferring a more limited power. *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 494–495, 103 S.Ct. 1962, 1971–1972, 76 L.Ed.2d 81 (1983); *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 379, 79 S.Ct. 468, 483, 3 L.Ed.2d 368 (1959)....

*Id.* at 807, 106 S.Ct. 3229. While it is clear that federal courts have subject matter jurisdiction over claims which are created by a federal statute, the Supreme Court has recognized that a case may also arise under federal law "where the vindication of a right under state law necessarily turned on some construction of federal law." [10]

---

**10.** To make clear, a state law claim which "arises under" federal law remains a state law claim. Unlike claims which are completely preempted, *i.e.*, claims within the purview of § 1132(a) of the Employee Retirement Income Security Act or § 301 of the Labor Management Relations Act, they are not converted into claims under a federal statute. Rather, they remain state law claims over which federal courts have original jurisdiction.

*Franchise Tax Board,* 463 U.S. at 9, 103 S.Ct. 2841; *Merrell Dow,* 478 U.S. at 809, 106 S.Ct. 3229. As summarized recently by the Sixth Circuit,

> [The Supreme Court] clearly left open the possibility of federal jurisdiction even in the absence of an express or implied federal cause of action, if a substantial federal question of great federal interest is raised by a complaint framed in terms of state law, and if the resolution of that federal question is necessary to the resolution of the state law claim.

*Long v. Bando Mfg. of America, Inc.,* 201 F.3d 754, 759 (6th Cir.2000). Following this standard, this Court may have subject matter jurisdiction over Plaintiff's claims if the resolution of a substantial question of federal law is necessary and essential.

In *Long, supra,* the Sixth Circuit specifically addressed whether a plaintiff's state law claim for wrongful discharge in violation of public policy, which was based, in part, on federal statutes, arose under federal law and, therefore, provided the district court with federal question subject matter jurisdiction. In concluding that the plaintiff's claim did *not* arise under federal law, the Court of Appeals relied upon *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988), in which the Supreme Court held that a claim does not "arise under" federal patent law if the complaint states alternate theories for that claim, only one of which requires resolution of a patent law question. 201 F.3d at 759–60. In light of *Christianson,* the Sixth Circuit reasoned that "there is no federal question jurisdiction when the complaint on its face states alternate theories supporting a state-law claim, at least one of which does not involve a federal question." *Id.* at 760.

■ Turning to the instant lawsuit, in paragraph 993 in Count Eight, Plaintiff sets forth his claim for unlawful discharge and retaliation in violation of public policy. He alleges, in pertinent part:

> During the period of time set forth in this complaint[,] a clear public policy existed, and exists at the filing of this lawsuit, that is manifested in the Constitution of the United States *and/or Constitution of the State of Ohio,* federal *and/or state statute and/or administrative regulation,* and/or in the common law[,] including but not limited to, state statutory requirements and policies on open public records (see O.R.C. Chapter 149); prohibitions against theft, fraud and/or conversion of property; limitations on the powers and influence of the Mayor and Commissioners of the City of Dayton (see City Charter); various prohibitions against graft, corruption, cronyism, nepotism (see e.g. the City Charter); prohibitions against discrimination (see e.g. 42 U.S.C. §§ 1983, 2000(e) et seq. and *O.R.C. Section 4112* ); clear public policy regarding family and/or medical leave embodied in federal *and state statutes and City of Dayton Personnel Policies and Procedures;* protections for persons seeking redress in the courts (e.g. Constitution of Ohio Art.1 § 16); protection against defamation (e.g. Constitution of Ohio Art.1 § 16); and/or various other prohibitions against retaliating and/or discriminating against a candidate for employment or a job position in exercises or attempts to exercise the aforementioned rights.

(Compl.¶ 993) (emphasis added). The plain language of the Complaint indicates that the policies upon which Plaintiff has relied are embodied in corresponding provisions of both federal and state law or in state law alone. Thus, on its face, Plaintiff's Complaint states alternate theories supporting his state-law claim of wrongful retaliation and discharge in violation of public policy, and that at least one of those theories does not involve a federal ques-

tion. Therefore, it is clear that the resolution of federal law is not necessary or essential to the resolution of this state law claim. Under the standard set forth in *Long*, Count Eight does not "arise under" federal law, even though it includes references to federal law. Because Plaintiff relies upon corresponding provisions of state law, Count Eight remains a state law claim for which the Court lacks subject matter jurisdiction.[11]

### C. *Citations to Federal Law in Footnotes*

■ Defendants asserts that Plaintiff has stated claims under federal law, due to the fact that he has cited to federal case law throughout his Complaint. Plaintiff's citations to federal law can be sorted into three groups: (1) citations regarding his hostile work environment claim; (2) citations regarding his equitable estoppel claim; and (3) citations regarding his retaliation claim.[12] Beginning with the hostile work environment harassment claim (Count Four), in footnotes 17–19, Plaintiff cites to *Harris v. Forklift*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Ellison v. Brady*, 924 F.2d 872 (9th Cir.1991); *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998); and *Andrews v. Philadelphia*, 895 F.2d 1469 (3d Cir.1990), in support of his allegations that the discrimination was severe and/or pervasive. In footnotes 20–22, he cites to *Harris, supra; Faragher v. Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118

S.Ct. 2257, 141 L.Ed.2d 633 (1998), to support his allegation that the discrimination altered the conditions of his employment and created an abusive environment. Each of the these cases discusses the requirements of a hostile work environment sexual harassment claim under Title VII.

Upon review of the cited case law and the Complaint, the Court does not conclude that Plaintiff has asserted a claim under Title VII. The caption of Plaintiff's hostile work environment harassment claim indicates that the claim is brought under Ohio Rev.Code § 4112.02 alone. In addition, Ohio courts have repeatedly recognized that the elements of a hostile work environment harassment claim under Chapter 4112 are the same as those under Title VII and, thus, Ohio courts have routinely looked to federal case law interpreting Title VII to resolve claims under Ohio Rev.Code § 4112. *See, e.g., Delaney v. Skyline Lodge, Inc.*, 95 Ohio App.3d 264, 642 N.E.2d 395, 399 (Hamilton Cty.1994) ("To determine the essential elements of a claim of sexual harassment pursuant to R.C. 4112.02(A), we look to the statute itself, to the administrative gloss, and to the federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S.Code."); *Malloy v. City of Cleveland*, 1999 WL 127254 at \*4 (Cuyahoga Cty. Mar. 4, 1999)("To determine the essential elements of a claim of hostile environment sexual harassment pursuant to R.C. 4112.02(A), Ohio courts have looked to federal case law interpret-

---

**11.** Count Nineteen contains similar references to federal law. In setting forth his claim of breach of the duty of good faith and fair dealing/bad faith contract, Plaintiff alleges that Defendants' duties "constitute liberty and property interests recognized under the First and Fourteenth [A]mendments [to] the United States Constitution *as well as corresponding provisions in the Constitution of the State of Ohio."* (*Id.* ¶ 1065) (emphasis added). Because Plaintiff has based this claim on cor-

responding provisions of both the federal and Ohio Constitutions, this claim also does require the resolution of federal law, and it does not arise under federal law.

**12.** The Court notes that not only are Plaintiff's citations to case law and to other authority unnecessary in a Complaint, but that many of Plaintiff's citations have typographical errors. The Court has endeavored to locate the proper citation for each federal case.

ing Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S.Code."); *Peterson v. Buckeye Steel Casings*, 133 Ohio App.3d 715, 729 N.E.2d 813, 1999 WL 378413 (Franklin Cty. June 8, 1999). Furthermore, although the referenced cases deal only with sexual harassment claims, Plaintiff has cited to them for his allegations regarding harassment and discrimination based on race and age, as well as sex. Finally, the Court notes that Plaintiff's race, sex, and age discrimination claims (Counts One through Three) are brought pursuant to Ohio Rev. Code Ch. 4112, only. Thus, the Court concludes that Plaintiff's reference in a footnote to case law concerning Title VII does not require the conclusion that Plaintiff has asserted a claim under Title VII itself, and that Plaintiff herein has not brought a federal hostile work environment harassment claim.

In setting forth his equitable estoppel claim, Plaintiff cites to *Minnesota Mining and Mfg. Co. v. Blume*, 533 F.Supp. 493 (S.D.Ohio 1978), *aff'd*, 684 F.2d 1166 (6th Cir.1982), *cert. denied*, 460 U.S. 1047, 103 S.Ct. 1449, 75 L.Ed.2d 803 (1983) and 461 U.S. 939, 103 S.Ct. 2110, 77 L.Ed.2d 314 (1983), which was decided by a federal court in this District. The Court notes that the page referenced in *Blume* (533 F.Supp. at 517) provides the elements for a claim of equitable estoppel. In addition, Plaintiff's citation to *Blume* is immediately preceded by a citation to Ohio Jury Instructions § 253.12. Plaintiff's citation to *Blume* in this context merely indicates that elements that he believes he must establish for his equitable estoppel claim, and it does not create federal subject matter jurisdiction.

Turning to Plaintiff's retaliation claims, Plaintiff has placed footnotes in three enumerated paragraphs, setting forth factual allegations in support of his retaliation claims. In paragraph 757 of his Complaint, Plaintiff alleges that Defendants wrongfully and unlawfully prevented Plaintiff from transferring to a position in the Law Department and in other departments of the City of Dayton for which he was qualified. Paragraph 757 contains a footnote, which cites to *Jackson v. Shell Oil Co.*, 702 F.2d 197 (9th Cir.1983), and *Binder v. Long Island Lighting Co.*, 57 F.3d 193 (2d Cir.1995). In *Jackson*, the Ninth Circuit upheld a jury determination that an employer discriminated against a sales representative, in violation of the Age Discrimination in Employment Act ("ADEA"), when it failed to permit him to transfer to another position. Plaintiff cites to *Binder*, presumably for the proposition that any failure to apply for vacant positions would not bar his recovery, because he had spoken with Defendant Gillispie regarding vacancies and was under the impression that Gillispie would pursue them for him. *See* 57 F.3d at 200–01. In paragraphs 939 and 940, Plaintiff alleges that Defendants intentionally or recklessly delayed notifying Aurora Administrative Solutions about the existence and names of his infant daughter and five-year old child. For both paragraphs, he cites to *Robinson v. Shell Oil Co.*, 519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997), asserting the proposition that employers can be held liable for retaliatory actions taken post-employment.

Although Plaintiff again cites to these federal cases to indicate the elements necessary for his retaliation claims, his enumerated claims for relief clearly indicate that he has sought relief pursuant to Ohio Rev.Code § 4112.02, only. Again, in light of the fact that Plaintiff's citations to federal case law might be considered in evaluating Plaintiff's state law retaliation claim and that there is no other indication that he has intended to bring suit pursuant to Title VII or the ADEA, the Court concludes that Plaintiff's footnotes do not ren-

der his retaliation claims federal in nature. Accordingly, Plaintiff has not set forth any federal claims, due to the citation to federal case law in his Complaint. Because Plaintiff has not alleged a federal claim, this Court lacks subject matter jurisdiction over the present action. Plaintiff's Motion for Remand (Doc. # 6) is SUSTAINED.

## II. *Attorney's Fees and Costs*

■ 28 U.S.C. § 1447(c) provides, in pertinent part: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The decision to award or to deny attorney fees is within the district court's discretion. *Morris v. Bridgestone/ Firestone, Inc.*, 985 F.2d 238, 240 (6th Cir. 1993); *Ahearn v. Charter Twp. of Bloomfield*, 1998 WL 384558 (6th Cir. June 18, 1998). "A threshold determination of bad faith, improper purpose, or vexatious or wanton conduct [is] not necessary." *Morris*, 985 F.2d at 240; *see Bucary v. Rothrock*, 883 F.2d 447 (6th Cir.1989) (district court may award costs without evidence that removal was frivolous or in bad faith). However, the court is not required to award attorney fees whenever removal is found to be improper. *Ahearn*, 1998 WL 384558 at *2, n. 2. An award of attorney fees is inappropriate "where the defendant's attempt to remove the action was 'fairly supportable', or where there has not been at least some finding of fault with the defendant's decision to remove." *Id.* (internal citations omitted). Conversely, "a court abuses its discretion by refusing to award fees where the defendant's argument for removal was devoid of even fair support." *Id.*

■ In the present case, Count Eight of Plaintiff's Complaint was clearly pursuant to state law, and the Court finds no reasonable basis to conclude that this state law claim arose under federal law, particularly in light of the Sixth Circuit's decision in *Long, supra.* However, Plaintiff's repeated references to federal law in footnotes throughout his Complaint raised a reasonable question as to whether Plaintiff intended to allege a federal hostile work environment claim and a federal retaliation claim. Accordingly, the Court concludes that an award of attorney fees and costs would not be fair and equitable under these circumstances.

For the foregoing reasons, Plaintiffs' Motion for Remand (Doc. # 6) is SUSTAINED. In summary, Defendants have complied with the procedural requirement that all Defendants consent to the removal of the action to federal court. Count Eight of Plaintiff's Complaint does not arise under federal law, because resolution of federal law is not necessary or essential to that claim. In addition, Plaintiff's repeated citations to federal case law, as indications of the elements of his state law discrimination and retaliation claims, do not render them federal in nature.

The captioned cause is REMANDED to the Montgomery County Court of Common Pleas from whence it cometh.

Judgment to be issued accordingly.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.